DAVID M. HONIGFELD, PLAINTIFF-APPELLANT, v. WILLIAM BYRNES, INSPECTOR OF BUILDINGS OF THE CITY OF PATERSON, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued February 15, 1954—Decided March 15, 1954.

601

Mr. *Louis Schwartz* argued the cause for appellant (*Messrs. Schwartz & Schwartz*, attorneys; *Mr. Sol Schwartz*, on the brief).

Mr. *Louis Nussman* argued the cause for respondents (*Mr. George Dimond*, on the brief).

The opinion of the court was delivered by

WACHENFELD, J. In an effort to provide additional space to accommodate guests of his hotel situated on East 33rd Street, Paterson, the plaintiff made certain improvements in a small, one-story building on the rear portion of the same plot as the main hotel building. When the building inspector, one of the parties defendant, denied the application for a certificate of occupancy "to occupy and use the accessory building in the rear of premises * * * for a hotel use and incidental to the hotel use of the main premises thereon," the plaintiff filed a complaint in lieu of prerogative writ.

The Board of Adjustment, the Board of Fire and Police Commissioners, and the Board of Public Works of the City of Paterson were all denominated defendants, inasmuch as the validity of certain ordinances and regulations of these municipal boards was challenged.

The relief sought was the setting aside of the building inspector's action because it was arbitrary, capricious and unreasonable; a restraint against the defendants interfering with the use of the premises as requested by the plaintiff in his application; the issuance to the plaintiff of the requested certificate of occupancy; and a declaration that section X, paragraph c of the Zoning Ordinance of the City of Paterson, on the basis of which the plaintiff's application was denied, was invalid or, as applied to the subject premises, unreasonable and void.

After hearing oral argument on cross motions for summary judgment, the court below entered judgment in favor of the defendants. The appeal, taken to the Appellate Division, was certified here on the court's own motion. *R. R.* 1:10–1.

Initially, a procedural question is presented, namely, whether or not the plaintiff was required to appeal to the board of adjustment before instituting the present suit.

The case projects purely legal questions, and the assertion is made that little would be accomplished by submitting the controversy to an administrative tribunal, whose function is not to construe statutes or ordinances or resolve constitutional issues.

Among other substantive points advanced is the contention that a certain portion of the building code is invalid as having been enacted without legislative authority, and also that the proposed use of the rear building constitutes an "accessory use" within the meaning of the zoning ordinance.

The decision thus turns upon questions peculiarly suited to judicial treatment rather than disposition by an administrative board engaged in a *quasi*-judicial function. In these circumstances the prerogative proceeding is wholly proper, *Tzeses v. Barbahenn*, 125 *N. J. L.* 643 (*E. & A.* 1940); *Lane v. Bigelow*, 135 *N. J. L.* 195 (*E. & A.* 1946);

*Carroll v. Board of Adjustment of Jersey City*, 15 *N. J. Super.* 363 (*App. Div.* 1951), and it was not necessary for the plaintiff to exhaust his remedy of administrative review.

Nor does *R. R.* 4:88–14 impose the necessity of an appeal to the board of adjustment before the present proceeding, for its requirement of exhaustion of remedies is prefixed with the clause "except where it is manifest that the interests of justice require otherwise." We think the ends of justice are best served in the present case by a judicial determination through a proceeding in lieu of prerogative writ; the procedure seems tailored to fit the situation at hand.

 The primary consideration is whether the appeal to the intermediate body would be a futile gesture; if so, it is not required, for reasonable speed is still an essential part of substantial justice. We have heretofore permitted parties to bypass the administrative agencies when the decisional task called for the resolving of legal questions.

In *Nolan v. Fitzpatrick,* 9 *N. J.* 477 (1952), we observed that on judicial review of a question of law "the opinions of these administrative tribunals would not be persuasive as they would be on questions of fact within their purview. The only result of requiring an exhaustion of administrative remedies where only a question of law is in issue would be useless delay, and this in the interest of justice cannot be countenanced."

Turning, then, to the substantive points raised, in the agreed statement in lieu of record it appears the premises in question are in a residence zone; that in June of 1952 the plaintiff secured a building permit authorizing the soundproofing of the walls and the partitioning of a bathroom in the rear building so it might be used as a recreation and music room in connection with the hotel, instead of as a garage; that the building inspector approved the work when completed and informed the plaintiff it was unnecessary to obtain a certificate of occupancy where the premises were used for the purposes set forth in the building permit.

Subsequently the plaintiff communicated to the building inspector his intention to use the rear building "as sleeping

rooms of the nature of hotel use and incidental to the hotel use of the main building." Upon being told such use of the rear building was prohibited, the plaintiff made formal application for a certificate of occupancy, "without prejudice to the rights of the applicant to use said premises as indicated above without making the herein application."

The application was denied for two reasons: (1) the rear yard space of 13.42 feet between the rear building and the rear lot line did not conform to the zoning ordinance requirement of a rear yard space of 25 feet; (2) the rear building did not meet the requirement of section 359, subsection II, of the building code, that a dwelling house or place of abode have frontage upon a street or highway.

Plaintiff contends compliance with these regulations is not required, because the rear building is to be put to an "accessory use" within the meaning of section III of the zoning ordinance, reading:

"In any residence zone, no building or premises shall be used and no building shall be erected which is arranged, intended or designed to be used, except for one or more of the following uses:
1. Dwellings or tenements, including the office of a physician. * * *
2. Boarding houses.
3. Hotels.
* * * * * * * *
9. Accessory uses customarily incident to the above uses, the term accessory use, however, not including a business or any building or use not located on the same lot with the building to which it is accessory."

The parties stipulated that if it should be determined the proposed use of the rear building is "accessory" in nature, then the rear lot requirement of section X of the zoning ordinance, mentioned above, would be satisfied because section IX of the ordinance authorizes the use of an accessory building in the rear half of the lot as long as it is not within ten feet of the rear lot line.

Supporting his position, the plaintiff cites authorities, judicial and otherwise, defining "accessory use" and determining whether divers fact situations accommodate the phrase. A noticeable distinction between a "principal" use

and an "accessory" use is reflected in the adjudications. They also evince a substantial requirement that a subordinate or incidental use bear a close resemblance and obvious relation to the main use to which the premises are put. *Dolan v. DeCapua,* 13 *N. J. Super.* 500 (*Law Div.* 1951); *De Benedetti v. River Vale Tp.,* 21 *N. J. Super.* 430 (*App. Div.* 1952); *Moulton v. Building Inspector of Milton,* 312 *Mass.* 195, 43 *N. E.* 2d 662 (*Mass. Sup. Jud. Ct.* 1942); see *Annotation,* 150 *A. L. R.* 494.

But here both buildings would perform the same function and serve the same principal purpose, to wit, accommodate hotel guests. The rear building would be put to the same identical use as the main building and therefore would not be subordinate, incidental or secondary.

Thus, according to the plaintiff's interpretation, difference in the scope of the activity or size of the use is a sufficient basis for distinguishing between principal and accessory use; but that test ignores the apparent intention of the authors of the ordinance to impose less severe restrictions where the property was to be put to a use different *in nature* from those enumerated.

The reasoning of the drafters is well-founded. Rear lot requirements are not unreasonable; indeed, they are particularly appropriate with respect to residential areas. And such provisions bear an obvious relationship to the health, safety, morals and general welfare of the community. *Collins v. Board of Adjustment of Margate City,* 3 *N. J.* 200 (1949); *R. S.* 40:55–30 *et seq.; Constitution of* 1947, *Art.* IV, *Sec.* VI, *par.* 2; see *McQuillin, Municipal Corporations* (*3d ed.*), *sec.* 25.140.

But where, as here, the ordinance contemplates the property may be put to a use different *in kind* from those specifically allowed in a residential zone, but still sufficiently related to the principal use to qualify as an accessory thereto, then the need for keeping structures within as strict boundaries disappears unless the fundamental element of health and safety of occupants remains. The liberal provision allowing accessory uses carries with it an easing of the re-

strictions ordinarily imposed with respect to the use of the property in a residential district, for the reason that if the use of the premises is of a related but different character, then the considerations of health and public safety, formerly of primary importance, are not as prevalent.

As to the second basis for denying the certificate of occupancy, the plaintiff seeks to escape the street frontage requirement of the building code, which concededly remains unsatisfied, by challenging its validity on the ground the board of police and fire commissioners had no authority to enact it. It having been determined the use in question is not accessory and therefore that the rear lot provision of the zoning ordinance has been violated, the point so raised is no longer controlling, and thus need not be decided.

However, we feel compelled to note that the board of public works, which by *R. S.* 40:55–30 is given the right to regulate and restrict the location and use and extent of use of buildings and structures and land for trade, industry, residence or other purposes, appears to be the proper body to promulgate the rule in question. This section of the statute is consistent with *R. S.* 40:55–32, by which the same body is permitted to enact regulations for the purpose of lessening congestion, securing safety from fire and providing adequate light and air, *inter alia*. Indeed, it is under the authority of these and companion statutes that the board of public works enacted the zoning ordinance.

*R. S.* 40:174–16, said by the defendants to grant to the board of police and fire commissioners the authority to pass the street frontage requirement, seems to be directed only toward safety precautions in the building of dwelling houses and other structures, and not to concern itself with other considerations of health and safety of the community. We have grave doubts as to its applicability to the situation at hand and make mention of it so it will not be inferred.

Two further contentions remain for disposition. The first is that section XIX of the zoning ordinance, requiring the property owner to secure and pay for a certificate authorizing him to use or occupy premises for purposes conform-

ing with the ordinance, is invalid, again as having been promulgated without express legislative authority.

■■ The plaintiff misconceives the nature of the requirement, looking upon it as a licensing act promulgated without the legislative sanction of *R. S.* 40:52–1, which deals with the issuing of licenses in certain situations, not including the one confronting us. But a certificate of occupancy is merely a tangible manifestation of proper use of one's property in accordance with the ordinance in question. Before it can issue, the building inspector is obliged to view and examine the premises to determine conformity with all appropriate regulations, and in light of this the charge of $2 would appear under the circumstances to be reasonable.

Furthermore, the plaintiff admits the right of a municipality to require a certificate of occupancy "stands or falls with the right to prohibit the character of the occupancy." *Durkin Lumber Co. v. Fitzsimmons*, 106 *N. J. L.* 183 (*E. & A.* 1929). The right of prohibition having been established here, the certificate, according to the plaintiff's own interpretation, was a proper requirement.

The statutes lend support to this view. *R. S.* 40:55–47 authorizes the board of public works to provide by ordinance for the enforcement of ordinances or regulations made under the chapter dealing with planning, building lines and zoning. And *R. S.* 40:48–2, under general and regulatory powers of municipalities, provides for ordinances and regulations which may be deemed "necessary and proper for the good government, order and protection of persons and property, and for the preservation of the public health, safety and welfare * * * and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law."

■ The legislative authorization is thus plain and we are satisfied the challenged portion of the ordinance is valid.

■ Lastly, the plaintiff argues that having obtained municipal authorization to occupy and use the rear building as a recreation and music room in connection with the main building, there was no necessity for a new application for

a certificate of occupancy to use the rear building for sleeping purposes.

The argument overlooks the unequivocal requirement of section XIX of the zoning ordinance that "no change or extension of use * * * shall be made * * * without a certificate of occupancy having first been issued * * *." Nor is there merit in the sophistic suggestion that no change of use is contemplated inasmuch as the general term "hotel use" includes all the activities and functions contemplated.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices HEHER, OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—7.

*For reversal*—None.