114 N.J. Super. 503 (1971)
277 A.2d 404
J.D. LAND CORP., AND J.D. CONSTRUCTION CORP., BOTH CORPORATIONS OF THE STATE OF NEW JERSEY, PLAINTIFFS-APPELLANTS,
v.
JOHN T. ALLEN, BUILDING INSPECTOR OF THE TOWNSHIP OF FREEHOLD; TOWNSHIP OF FREEHOLD, IN THE COUNTY OF MONMOUTH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY; AND TOWNSHIP COMMITTEE OF THE TOWNSHIP OF FREEHOLD, IN THE COUNTY OF MONMOUTH, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued May 4, 1971.
Decided May 12, 1971.
*505 Before Judges KILKENNY, HALPERN and LANE.
Mr. V. David Shaheen, Jr., argued the cause for appellants (Messrs. Giordano, Giordano & Halleran, Attorneys; Mr. John R. Halleran, on the brief).
Mr. John A. Kaye, Substituted Attorney, argued the cause for respondents (Mr. Donald J. Cunningham submitted the brief).
Messrs. Hutt & Berkow submitted a brief on behalf of N.J. Builders Association, Amicus Curiae (Mr. Stewart M. Hutt, of counsel; Mr. Hutt and Mr. Richard W. Kracht, on the brief).
The opinion of the Court was delivered by LANE, J.A.D.
Plaintiffs appeal from a summary judgment declaring that Article IX, Section 8 of the Freehold Township Land Subdivision Ordinance is valid.
The first count of the complaint in lieu of prerogative writ sought a judgment compelling John T. Allen, Building Inspector of the Township of Freehold, to issue a certificate of occupancy for a particular dwelling constructed by plaintiffs in Section 3 of a development under construction by plaintiffs in the township. Allen's refusal was based upon Article IX, Section 8 of the Land Subdivision Ordinance. The complaint sought in the second count a declaratory judgment that the ordinance was invalid. During the course of the proceedings, a consent order was entered directing that the certificate of occupancy requested be issued and dismissing the first count.
In 1967 plaintiffs purchased 102 lots designated as Section 3 and Section 4 of a subdivision known as Green Tree at Freehold. Final approval of the proposed subdivisions had been obtained. To obtain final approval for Section 3, a bond in the amount of $121,755.28 and cash in the amount *506 of $13,528.37 was posted in accordance with the Subdivision Ordinance to guarantee the installation of the required subdivision site improvements.
An affidavit in support of the complaint stated that on December 6, 1969 plaintiff entered into an agreement to sell a residence to a Mr. and Mrs. Holloway. Closing of title was fixed for June 5, 1970. The residence had been approved by the building inspector as being constructed in accordance with the applicable building codes and township ordinances. Application for a certificate of occupancy was denied although before that time certificates of occupancy for 11 residences in Section 3 had been granted. The refusal to issue a certificate of occupancy was based upon Article IX, Section 8 and the fact that certain of the Section's site improvements had not been completed, including a portion of "the final top on street pavement," some concrete curbs and sidewalks, shade trees, monuments and concrete aprons. The estimate for the completion of these improvements was $22,085.50. At the time of the refusal, the municipality still held the performance bond and the cash deposit referred to above.
Article IX, Section 8 provides:
SECTION 8. ISSUANCE OF CERTIFICATE OF OCCUPANCY. No dwelling shall be deemed habitable nor shall a certificate of Occupancy be issued by the Building Inspector unless all required improvements have been completed in the section for which final approval has been granted. Prior to the issuance of a Certificate of Occupancy, all improvements as set forth in Article VIII of this Ordinance shall have been installed including but not limited to the following: complete pavement (base and surface course, concrete curb, gutter, driveway and sidewalk), finish storm sewer system, connection to operative sanitary sewer system, water supply system, and source of electricity, landscaping, shade trees and monuments. The owner or subdivider shall have the right to make application to the Township Committee in respect to the completion of one or more of the required improvements set forth in Article VIII of this Ordinance, which application shall be in writing addressed to the Township Committee at least fourteen (14) days prior to the next regular meeting of the Township Committee. Upon receipt of such request, the procedure in connection with such application shall be as follows:
*507 (a) The Township Committee may at its discretion allow the owner or subdivider an opportunity to be heard in respect to such application at a time and date to be set by the Township Committee.
(b) The Township Engineer shall, within five (5) days of receipt of the request of the Township Committee, report his findings in respect to the application of the owner or subdivider for a Certificate or Certificates of Occupancy to the Township Committee.
(c) In the event that the Township Committee approves the issuance of a Certificate or Certificates of Occupancy pursuant to the application of the owner or subdivider, the owner or subdivider shall be obligated to post a cash bond in addition to the performance guarantee heretofore posted, to cover the cost of the required improvements. The Township Engineer shall be obligated as part of his report aforesaid, to set forth the amount required for such cash bond.
(d) The Building Inspector shall be informed in writing by the Township Engineer to issue such Certificate or Certificates of Occupancy. The owner or subdivider shall complete those improvements referred to aforesaid within six (6) months from the date of the posting of the cash bond. In the event that such owner or subdivider has failed to install the improvement or improvements which is the subject matter of this section, the owner or subdivider agrees that the cash bond shall be retained by the Township as a reasonable amount for the purpose of permitting the Township to complete the improvement or improvements.
Paragraph (c) refers to a "cash bond," meaning a deposit with the municipality of cash.
The trial judge held that Section 8 was valid but recognized that it was "inequitable." He further recognized that the requirement for a cash deposit in addition to the performance bond that had been required at the time of the final approval resulted in a "double indemnity" to the municipality. The ordinance was held to be a valid exercise of the municipality's police powers.
The questions raised on this appeal are:
(A) Does a municipality have the power to condition the issuance of a certificate of occupancy upon the deposit of further security for the installation of subdivision site improvements?
(B) May a municipality withhold certificates of occupancy to enforce its land subdivision ordinance?
*508 (C) If a municipality may use certificates of occupancy to enforce a land subdivision ordinance, does the ordinance under review contain adequate standards?

A
Since municipalities are creatures of the State and can only exercise powers granted to them by the Legislature, statutory authorization must be found before the ordinance under consideration can be determined to be valid. Wagner v. Newark, 24 N.J. 467 (1957). The power to control planning and subdivision approval is granted by N.J.S.A. 40:55-1.1 et seq. (Municipal Planning Act (1953)). Certain powers concerning land control are also granted to municipalities by N.J.S.A. 40:55-1.30 to 1.42 (Official Map and Building Permit Act (1953)). Power for subdivision regulation is derived from these acts. Any exercise of that power must be in accordance with the procedures and methods set forth in the acts. Cf. Brazer v. Mountainside, 55 N.J. 456 (1970); Kligman v. Lautman, 53 N.J. 517 (1969). In construing the provisions of these acts, questions arising should be resolved in favor of the municipality whenever reasonably possible. Levin v. Livingston Tp., 35 N.J. 500 (1961).
N.J.S.A. 40:55-1.18 provides that tentative approval of a subdivision plat may be granted which confers upon the subdivider certain rights enumerated in the statute for a three-year period. Such approval may be subject to certain conditions set forth in N.J.S.A. 40:55-1.20.
N.J.S.A. 40:55-1.21 provides in part:
Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, or the furnishing of a performance guarantee in lieu thereof, of any or all of the following improvements it may deem to be necessary or appropriate: street grading, pavement, gutters, curbs, sidewalks, street lighting, shade trees, surveyor's monuments, water mains, culverts, storm sewers, sanitary sewers or other means of sewage disposal, drainage structures, and such other subdivision *509 improvements as the municipal governing body may find necessary in the public interest.
The statutory scheme is clear. A municipality may require the installation of all subdivision site improvements before final approval. It may, on the other hand, grant final approval subject to the subdivision site improvements being made at a subsequent time. To assure that such site improvements will in fact be made, the Legislature has authorized municipalities to require as a condition for granting final approval the posting of a performance guarantee. N.J.S.A. 40:55-1.22. This procedure was followed by Freehold Township here. The estimated cost of the subdivision site improvements was $135,283.65. The subdivider posted a bond with a corporate surety in the amount of $121,755.28 and deposited in escrow with the municipality cash in the amount of $13,528.37 representing 10% of the estimated cost of the subdivision site improvements.
Assuming that certificates of occupancy can be used for subdivision control (see B hereafter), we find no statutory authorization allowing a municipality to require the posting of an additional cash deposit to assure the completion of subdivision site improvements as a condition to the issuance of a certificate of occupancy. The legislative scheme provides for one performance guarantee to be given as a condition to final approval. N.J.S.A. 40:55-1.21 and N.J.S.A. 40:55-1.22 relate the amount of the bond to the cost of the subdivision site improvements. A municipality may not exact a performance guarantee in excess of such amount. Under Article IX, Section 8, Freehold Township is attempting to do exactly that. Cf. Legion Manor v. Wayne Tp., 49 N.J. 420 (1967); McKenzie v. Arthur T. McIntosh and Company, 50 Ill. App.2d 370, 200 N.E.2d 138 (App. Ct. 1964); 3 Rathkopf, Law of Zoning and Planning, § 8, at 71-81 (3d ed. 1971). The ordinance insofar as it requires a cash deposit as security, in addition to the performance guarantee under N.J.S.A. 40:55-1.22, for the same action *510 by the subdivider is invalid. Cf. West Park Ave., Inc. v. Ocean Tp., 48 N.J. 122 (1966).

B
Plaintiffs urge that a certificate of occupancy may not be used by a municipality to enforce a land subdivision ordinance.
Certificates of occupancy are not supported by any express legislative authority. Their use has been specifically approved in Honigfeld v. Byrnes, 14 N.J. 600 (1954). There the court stated:
* * * But a certificate of occupancy is merely a tangible manifestation of proper use of one's property in accordance with the ordinance in question. Before it can issue, the building inspector is obliged to view and examine the premises to determine conformity with all appropriate regulations, and in light of this the charge of $2 would appear under the circumstances to be reasonable.
Furthermore, the plaintiff admits the right of a municipality to require a certificate of occupancy "stands or falls with the right to prohibit the character of the occupancy." Durkin Lumber Co. v. Fitzsimmons, 106 N.J.L. 183 (E. & A. 1929). The right of prohibition having been established here, the certificate, according to the plaintiff's own interpretation, was a proper requirement.
The statutes lend support to this view. R.S. 40:55-47 authorizes the board of public works to provide by ordinance for the enforcement of ordinances or regulations made under the chapter dealing with planning, building lines and zoning. And R.S. 40:48-2, under general and regulatory powers of municipalities, provides for ordinances and regulations which may be deemed "necessary and proper for the good government, order and protecton of persons and property, and for the preservation of the public health, safety and welfare * * * and as may be necessary to carry into effect the powers and duties conferred and imposed by this subtitle, or by any law." [14 N.J. at 608]
In addition, authority to require certificates of occupancy may be implied from the statutory provisions for building permits. N.J.S.A. 40:48-1(13) and N.J.S.A. 40:55-1.30 to 1.42. The use of a certificate of occupany is a method of assuring that there has been compliance with the *511 building permit after the building has been erected. See 2 Anderson, American Law of Zoning, § 13.03 at 546-548 (1968). There is no provision in the statutory scheme or in past or present practice to indicate that they may not be used for subdivision control pursuant to the general powers of a municipality under N.J.S.A. 40:48-2.
Use of certificates of occupancy for subdivision control serves a valid and useful purpose. A municipality should have control over the time for the installation of the subdivision site improvements as they relate to the health, welfare and safety of persons purchasing residences in the subdivision under construction. The parties point to no specific legislative provision under which such control can be otherwise exercised. Holding that the control can be exercised by the use of certificates of occupancy is in accordance with the legislative scheme under the Municipal Planning Act (N.J.S.A. 40:55-1.1 et seq.). The power is implied as incident to the total statutory scheme for subdivision control. Cf. Kligman v. Lautman, 53 N.J. 517, supra; N.J.S.A. 40:55-1.39.
The power to use certificates of occupancy as a legitimate tool of subdivision control, however, must be reasonably exercised and be related to the residences for which certificates of occupancy are sought. Cf. Brazer v. Mountainside, 55 N.J. 456, supra; Longridge Builders, Inc. v. Planning Bd. of Princeton, 98 N.J. Super. 67 (App. Div. 1967), aff'd 52 N.J. 348 (1968). It would be unreasonable for a municipality to provide by ordinance that all subdivision site improvements must be installed as a condition for the issuance of a certificate of occupancy for the first house built at the very entrance to the subdivision. While it is appropriate to require the installation of subdivision site improvements needed for the health, welfare and safety of the occupants of a particular house, no legitimate purpose would be served by requiring installation of all site improvements that would be serving all the other houses to be constructed in the future.

*512 C
It remains to be determined whether Article IX, Section 8 is a valid exercise of the municipality's right to use certificates of occupancy for its subdivision control. The answer is short. The ordinance contains no standards whatsoever. It would allow the municipality to require the installation of all subdivision site improvements as a condition for the issuance of the first certificate of occupancy. Therefore, not only is there a lack of standards, but the procedure provided for does not properly serve the purpose for which certificates of occupancy may be used in land subdivision control. Gabe Collins Realty, Inc. v. Margate City, 112 N.J. Super. 341 (App. Div. 1970). The ordinance insofar as it provides for the issuance of certificates of occupancy is in its present form invalid for lack of adequate standards. Moyant v. Paramus, 30 N.J. 528 (1959); Weiner v. Stratford, 15 N.J. 295 (1954); Phillips v. Belleville, 135 N.J.L. 271 (Sup. Ct. 1947).
It would not be appropriate for us to try to detail what standards would be adequate. Such decision is better left until a case arises in which the question is fully briefed and argued. Lucky Calendar Co. v. Cohen, 20 N.J. 451 (1956); Hildebrandt v. Bailey, 65 N.J. Super. 274 (App. Div. 1961). It is sufficient to say that the withholding of a certificate of occupancy as a subdivision control must be related to the health, welfare and safety of the occupants of the residence for which the certificate is sought. The basis of our holding today is that there are no standards in this ordinance.
The judgment of the Law Division will be reversed, and a judgment entered declaring Article IX, Section 8 of the Freehold Township Land Subdivision Ordinance of 1967, dated July 10, 1967, invalid.