## Richmond

PLANNING COMMISSION OF THE CITY OF FALLS CHURCH, VIRGINIA, ET AL. v. IRVING BERMAN, BETTY BERMAN AND THE RED BARN SYSTEM, INC.

April 26, 1971.

Record No. 7348.

Present, All the Justices.

*LaRue Van Meter, City Attorney*, for plaintiffs in error.

*Royce A. Spence* (*Lytton H. Gibson*, on brief), for defendants in error.

HARRISON, J., delivered the opinion of the court.

On the petition of Irving Berman and Betty Berman, husband and wife, and the Red Barn System, Inc., appellees, a writ of mandamus

was granted by the lower court ordering appellants, Planning Commission of the City of Falls Church, Virginia, and the individual members thereof to approve a site plan application filed by appellees. Ralph B. Ley, Building Inspector for the City of Falls Church, appellant, was directed to issue a building permit to the appellee petitioners in accordance with the site plan. The Planning Commission and Ley were granted an appeal from this final order of the lower court.

Red Barn System, Inc., with headquarters in Florida, franchises a chain of restaurants throughout the country. The restaurant structure is similar in design and appearance to a red barn. In 1968 it leased from the Bermans two parcels of land, located on West Broad Street in Falls Church, with the intention of erecting thereon a free standing restaurant. The leased land was zoned in a category, designated as B-1 and B-2, which allowed, prior to April 28, 1969, the erection thereon of a free standing restaurant.

The zoning ordinances of Falls Church, as applied to the contemplated use, require the submission of a site plan application detailing the proposed utilization of the land. The Planning Commission has the responsibility for reviewing the application and insuring a compliance with applicable regulations before giving approval to the site plan. Following such approval the applicant then secures a building permit which is also a prerequisite to construction.

On December 10, 1968 Red Barn filed its site plan application with the appropriate officials of the city. After it was reviewed, commented on by the planning staff and returned, Red Barn submitted a formal application on December 30, 1968. Subsequently, amendments thereof were submitted by it on January 31, 1969 and February 24, 1969. The amendments reflected and incorporated changes and recommendations suggested by the planning department and the commission members. Notwithstanding this, the Planning Commission, in two meetings held on February 17 and March 17, 1969, failed to approve the site plan.

The trial judge found as a fact that the reasons given by the Planning Commission for a denial of the site plan on March 17, 1969 were purely "technical" and constituted an effort to illegally control the use of the land contrary to the existing zoning law; that the presentation and processing of the site plan was in conformity with the usual procedure and customs adhered to by other applicants, including Lums, Burgerchef, Junior Hot Shoppes, Tops, etc., all of which were approved and constructed; and that appellees were

ready, willing and able to comply with all technical and engineering requirements imposed by law, such as entrances, screening, lighting, etc.

The evidence amply supports the conclusions reached by the trial court. It plainly appears from the testimony that the denial of approval to appellees was not in fact predicated on Red Barn's failure to comply with zoning regulations, but because of a desire of the Planning Commission to forestall the further proliferation of free standing franchise restaurants on West Broad Street.

The evidence shows that the West Broad Street section of Falls Church was once an attractive residential district which, in recent years, has been taken over by highway-oriented businesses, such as service stations, garages and franchise restaurants.

Officials of the city in late 1968 and early 1969 became increasingly concerned with the growth and number of franchise restaurants along the street. It was their considered judgment that this type of growth was undesirable, and they concluded that it would be in the best interest of the city that the West Broad Street neighborhood become an extension of the business district with office and shop development.

To this end a series of informal and private meetings were held by several officials whose responsibility concerned planning, zoning and approval of site plans. These meetings began in December 1968 and ultimately resulted in an amendment to the city's restaurant ordinance which was enacted and became effective on April 28, 1969.

In substance, this amended ordinance prohibited on West Broad Street free standing restaurants, i.e. restaurants not contained in dominant buildings. It is noted that notwithstanding there were a number of policy discussions and informal meetings held by city officials, it was not until March 20, 1969, at a joint meeting of the City Council and the Planning Commission, that the planning staff was directed to formulate the ordinance which was adopted on April 28, 1969.

Following disapproval of their site plan by the Planning Commission on March 17, 1969, appellees filed their petition for a writ of mandamus on April 18, 1969, resulting in the final judgment of the court below granting the writ on July 1, 1969. The effect of the writ was to permit the construction of the Red Barn restaurant on the location in question.

The trial court has found on credible evidence that at the

time their petition was filed, appellees had complied with all provisions of the ordinances of Falls Church and the usual procedures and requirements, or were ready, willing and able to comply. Under such circumstances, approval of the site plan and the issuance of a permit were no longer discretionary but ministerial and mandatory. Mandamus was a proper remedy to require the relief sought from the city officials.

■ Appellants argue that the trial judge erred in not applying the restaurant ordinance, as amended on April 28, 1969.

It is clear from the record that the amendment to the restaurant ordinance was precipitated by the Red Barn's site plan application, and that action on appellee's application for approval was deferred, delayed and disapproved to enable the City Council to enact such amendment. It was not enacted until after the proceeding under review was instituted, and it was not a matter of public record that such an amendment was contemplated until after the appellees' site plan application had been denied. Further, no one has claimed that the application was not filed in good faith or that its filing was expedited in anticipation of the zoning ordinance being amended.

Appellees do not challenge either the desirability or the legality of the amendment. The simple issue before us is whether or not the appellees, who own property that is zoned in a category which permits the erection of free standing restaurants, and which is located in a neighborhood in which numerous other similar restaurants have been erected, and who complied with all existing ordinances, rules, regulations and requirements incident to having their site plan application approved, can be denied such approval. Clearly the trial court was right in the conclusion that it reached.

■ Appellants contend that the proposed "Red Barn" restaurant is in violation of the city's sign ordinance, and argue that the facade of the building itself is a sign and is in excess of the permissible sign area.

Section 22-46.14 of the city's sign ordinance provides as follows:

"Within the intent of this Section, *Signs* shall mean: Any letters, figures, designs, symbol, trademark or illuminating device intended to attract attention to any place, subject, person, firm, corporation, public performance, article, machine or merchandise painted, printed or constructed and displayed in any manner out of doors for recognized advertising purposes. . . ."

Among the numerous definitions of a "sign" will be found, in Webster's Third New International Dictionary, p. 2115, the following:

"A lettered board or other public display placed on or before a building, room, shop, or office to advertise the business there transacted or the name of the person or firm conducting it . . . a conspicuously placed word or legend (as on a board or placard) of direction, warning, identification, or other information of general concern. . . ."

"Facade" is defined in Webster's Third New International Dictionary, p. 811, as:

"The front of a building . . . a face (as a flank or rear facing on a street or court) of a building that is given emphasis by special architectural treatment . . . a false, superficial, or artificial appearance or effect. . . ."

We do not find in the record a picture of the proposed Red Barn restaurant. Manifestly its distinctive feature would be its shape, color and resemblance to a barn. Presumably the purpose of such an architectural design would be to make the building easily identifiable and, hopefully, attractive to the traveling public and to prospective customers. It is a matter of common knowledge that numerous national franchise chains operating motels, restaurants, gift shops and other businesses have designed buildings which, because of their architectual distinctiveness, shape and color, are recognized and identified with certain products, foods or services.

The trial judge found from the evidence that the frontal facade of a building does not constitute a sign as it is contemplated or defined under the city's sign ordinance. We agree that the meaning of "sign" does not encompass a peculiar or distinctive architectural design, and that neither the proposed Red Barn restaurant nor its facade constitutes a sign within the prohibition of the ordinance.

The order of the trial court is supported by the evidence and is not contrary to law. Accordingly it is

*Affirmed.*