126 N.J. Super. 505 (1974)
315 A.2d 702
SUPERMARKETS OIL COMPANY, INCORPORATED, A NEW JERSEY CORPORATION, PLAINTIFF-RESPONDENT,
v.
JOHN M. ZOLLINGER, BUILDING INSPECTOR, AND THE MAYOR AND COUNCIL OF THE BOROUGH OF SAYREVILLE, NEW JERSEY, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued November 19, 1973.
Decided February 8, 1974.
*506 Before Judges LYNCH, MEHLER and MICHELS.
Mr. James V. Higgins argued the cause for appellants.
Mr. Arthur W. Burgess argued the cause for respondent (Messrs. Toolan, Romond, Burgess & Abbott, attorneys).
The opinion of the court was delivered by LYNCH, J.A.D.
This is an appeal by defendants, respectively the building inspector and mayor and council of the Borough of Sayreville (borough), from a judgment in an action in lieu of prerogative writs whereby the building inspector was ordered to issue to plaintiff a permit for erection of an automobile car wash on its property where it operates a gasoline filling station. The judgment also adjudged that (a) an automobile car wash was a permitted use in the B-3 Highway Business Zone as a "public garage," as declared in Definition No. 20 of the borough's zoning ordinance, and (b) plaintiff was not required to exhaust its administrative remedies at the municipal level before instituting its "in lieu" action in the Law Division.
On July 30, 1971 plaintiff had applied to the board of adjustment for a permit to construct a gasoline filling station and automatic car wash. However, plaintiff withdrew its application for permission to construct the car wash and, subsequently, on recommendation of the board of adjustment, the mayor and council authorized the gasoline station use.
*507 About a year later, May 28, 1972, defendant building inspector issued a building permit to plaintiff authorizing construction of the car wash. On June 21, 1972 the mayor and council directed the building inspector to revoke the permit and he forthwith did so. Thereupon plaintiff instituted this "in lieu" action.
The basic reasoning of the trial court in directing issuance of the permit for the car wash is that such an operation is a permitted use under the borough's zoning ordinance in that it comes within the definition of a "public garage," a permitted use in a B-3 District.
That definition reads as follows:
A building or part thereof, other than a private garage, used for the storage, care or repair of motor vehicles for profit, including any sale of motor vehicles, fuels, or accessories, or where any such vehicles are kept for hire. [Sayreville zoning ordinance, Art. III, ¶ 20]
More specifically, the trial court held that a car wash comes within the definition because it is a facility for the "care" of automobiles.
Appellants' first contention is that plaintiff failed to exhaust its administrative remedies by failing to appeal to the board of adjustment before instituting its "in lieu" action, citing R. 4:69-5. But where interpretation of a zoning ordinance is called for, the issue is a legal one and is peculiarly suited to the judicial function, and resort need not be first had to administrative remedies. Schack v. Trimble, 48 N.J. Super. 45 (App. Div. 1957), aff'd 28 N.J. 40 (1958); Jantausch v. Verona, 41 N.J. Super. 89 (Law Div. 1956), aff'd 24 N.J. 326 (1957). Here we have an issue as to interpretation of a "public garage" as defined in the borough's ordinance, and therefore exhaustion of administrative remedies was not required before institution of this "in lieu" action.
First, it is noted that a "car wash" is not expressly mentioned as a "permitted use" under the ordinance, though many *508 other uses are mentioned, including automobile sales rooms and public garages. (Ordinance, Art. XI, ¶ 1(f)). At the time of plaintiffs application for the building permit, gasoline service stations were also mentioned, though later eliminated as a permitted use.
Is a car wash facility, then, a "building * * * used for the * * * care * * * of motor vehicles," and therefore a public garage within the meaning of this ordinance?
Respondent cites several out-of-state cases wherein the court referred to general definitions of "garage" as a "station at which motor cars can be sheltered, stored, repaired, cleaned, and made ready for use; also a place of private storage for a motorcar, a stable for motor cars." (Emphasis added). White v. Home Mutual Ins. Ass'n, 189 Iowa 1051, 179 N.W. 315 (Sup. Ct. 1920). However, in several of the cases that definition was not used in a context of an issue concerning a "car wash." For example, in Woods v. Kiersky, 14 S.W.2d 825 (Texas Comm. App. 1929), the issue was whether a building containing storage for cars on the first floor, with apartments on the second floor, was a "private garage" within the meaning of the zoning ordinance It had nothing to do with "car wash." In Legum v. Carlin, 168 Md. 191, 177 A. 287 (Ct. App. 1935), the issue was whether an automobile sales room was a public garage as intended within the terms of a covenant against use of land for such use. Red Arrow Garage and Auto Co. v. Carson City, 47 Nev. 473, 225 P. 487 (Sup. Ct. 1924), concerned itself with whether a gasoline service station had to pay separate taxes (a) for its garage license and (b) on sales of gasoline. White v. Home Mutual Ins. Ass'n, supra, construed an insurance policy in context of an issue as to whether a "lean-to" connected with a barn was a "garage" within the meaning of a policy which required that the vehicle be stored in the garage. In other words, none of those cases concerned themselves with that part of the definition of "garage" which concerned itself with "cleaning" of automobiles
*509 On the other hand, the case of Rando v. Bd. of Appeals of Bedford, 348 Mass. 296, 203 N.E.2d 375 (Sup. Jud. Ct. 1965), did hold that a "car wash" came within the term of "garage" in a zoning ordinance which required approval by the board of appeals in order for garage use to be permitted. There the court was considering the question under a zoning ordinance which prohibited use of a building or premises for injurious, noxious or offensive purposes except for "[f]illing station, garage, or storage of automobiles, if authorized by the Board of Appeals." The court held that a car wash, since it would tend to congregate automobiles in one place, came within the provision which required approval of the board of appeals. We do not have here any consideration of the possible noxious factors involved in the allowance of a "car wash" such as was involved in the Bedford ordinance.
Another case cited by respondent is Novello v. Zoning Board of Adjustment, 384 Pa. 294, 121 A.2d 91 (Sup. Ct. 1956). There it was held that a "car wash" was a use customarily accessory and incidental to the operation of a public or commercial garage, repair shop or gas or oil service station, under an ordinance which permitted accessory uses. The instant ordinance has no such provision.
While a general definition of "garage" which includes use for "cleaning" arguably could be construed to include "car wash" within its meaning, we note that Sayreville could well have included "cleaning" in the ordinance's definition of "public garage" if it intended to do so. Such dictionary definition was available for use but was not incorporated in the ordinance.
We prefer to accept the definition for "garage" as contained in Webster's New International Dictionary (2d ed. 1950), 1033, as follows: "(1) a building for housing automotive vehicles; also a repair shop for such vehicle." This we conceive to be the ordinary meaning of the word "garage." A car wash is not such a building.
We come, then, to the specific definition of "public garage" in this ordinance. We note that it is said to be a building *510 or part thereof used for the "storage, care or repair" of motor vehicles, etc. Consistent with the ordinary meaning of garage in the sense that it implies a bailment whereby the owner transfers possession of the vehicle to another, the words "storage" and "repair" necessarily imply such bailment. It is in this association with the words "storage" and "repair" that the word "care" is to be construed. Applying the rule of noscitur a sociis, we conclude that the meaning of "care" involves the concept that the owner transfers his automobile to another to "take care of" it.
We cannot close our eyes to what we know a car wash to be today. It is an imposing mechanical operation which dispenses water and soap-like substances on a car; large brushes advance the cleaning process, and, on occasion, the cars are also waxed. During the whole sequence the car is mechanically propelled through the various steps of the process. There is no "storing." There is no commitment of the car to the car wash operator to "take care of it," as suggested by the word "care" in this ordinance. We also know that a modern "car wash" develops lines of traffic sometimes extending to the street off-premises of the car wash installation itself. Thus it entails traffic problems beyond what would ordinarily be within the concept of "storage" or "caring" for a car. Cf. Bern v. Fair Lawn, 65 N.J. Super. 435, 451 (App. Div. 1961). In sum, we conclude that a "car wash" is not within the ordinary meaning of the language of the ordinance. We feel that if the framers of the ordinance intended that a "car wash" operation were to be included within the concept of "caring" for a car, they would have expressly said so, or would have expressly mentioned it as a "permitted use" under Art. XI, ¶ 1 of the ordinance.
Plaintiff also argues that, at the time it was granted a "special use" exception for the construction of a "gasoline filling station," the ordinance definition of "gasoline filling station" permitted "washing" of motor vehicles and thus would permit an automatic car wash, upon the granting *511 of the permit. Art. III, ¶ 21 of the ordinance defined "Gasoline Filling Stations" as follows:
Any area of land, including structures thereon, that is used for the sale of gasoline or other motor vehicle fuel, oil, or lubricating substance, and which may include the sale of motor vehicle accessories and facilities for polishing, greasing, washing, spraying, dry cleaning or otherwise cleaning or servicing such motor vehicles.
We conceive that permitting "washing" of motor vehicles is a far cry from permitting what we understand to be an automatic car wash, and again we conclude that if such use were intended to be permitted the ordinance would have clearly said so. It will also be recalled that when plaintiff applied for a gasoline service station permit it also applied for permission to construct an automatic car wash. But then it withdraw its application for the latter and consequently at that time there was no hearing on that issue. It is fair to say that plaintiff then conceded that its gasoline service station permit did not include permission to construct an automatic car wash. Thus it later applied for the special permit for such use, the denial of which is before us now.
Reversed.