## Richmond

YORK PHILLIPS, ETC., ET AL.

v.

TELUM, INC.

June 18, 1982.

Record No. 791856.

Present: All the Justices.

*Peter L. Trible, County Attorney,* for appellants.
*Andrew J. Ellis, Jr. (D. Eugene Webb, Jr.; Mays, Valentine, Davenport & Moore,* on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

This appeal from an order granting a writ of mandamus in a zoning case presents the recurring question of exhaustion of administrative remedies. Because we find that the applicant for mandamus failed to exhaust administrative remedies, we reverse.

The petition for mandamus was filed in the trial court by Telum, Inc., the contract purchaser of the land in question, against York Phillips and Edward B. Bowles, County Planner and Building Official, respectively, of Hanover County, and Hanover County itself (collectively, the County). Telum sought a writ commanding the named officials to approve and issue a building permit for improvements Telum proposed to construct on the land. After a hearing, the trial court granted a writ directing issuance of the permit.

The record shows the tract in dispute contains approximately eleven acres of land located in the southeast quadrant of the intersection of Routes I-95 and 54 in Hanover County, just east of the town limits of Ashland. Telum proposes to construct on the tract a "self-service truck stop" consisting of a three-island gasoline canopy 30 feet by 74 feet, a six-island diesel canopy 30 feet by 174

feet, and a kiosk containing a salesroom, snack bar, and restrooms. Construction plans call for underground storage of 80,000 gallons of diesel fuel and 32,000 gallons of gasoline. While the station would serve both automobiles and trucks, Telum estimates that "over fifty percent of the total vehicles [served] would be trucks."

Soon after Telum contracted to purchase the land in January, 1978, public opposition to the project surfaced. At the May, 1978 meeting of the board of supervisors, an effort was initiated to down-zone the property from its "B-3 General Business District" classification; this attempt was abandoned when the legality of the proposed action was questioned.

In June, 1978, Telum filed a site plan and an application for a building permit. At the time, the County Planner indicated to Telum's representatives that the B-3 zoning on the property would permit the proposed filling-station use. In July, the Planner wrote Telum's engineer suggesting certain revisions in the site plan and stating that once the changes were incorporated into a final plan, "recordation in the Clerk of the Circuit Court office [would] follow."

On May 7, 1979, Telum filed its revised plan and, for the first time, was informed by the County Planner that the proposed use was not permitted in a B-3 zoning district. Telum then filed its petition for a writ of mandamus.

Under the county's zoning ordinance in effect at the time of the trial below, "Permitted Uses" included "[f]illing stations, so long as bulk storage of inflammable liquids is underground." The term "filling station" was defined as "[a]ny place of business with pumps and underground storage tanks, having as its purpose the servicing, at retail, of motor vehicles with fuels and lubricants. . . ." However, the "purpose" section under the "B-3 General Business District" heading stated in part that "[t]he purpose of this district is to provide sufficient space in appropriate locations for a wide variety of . . . automotive . . . and miscellaneous service activities . . . not characterized by . . . frequent heavy trucking activity. . . ."

At trial, Telum presented the opinions of several witnesses that the proposed filling-station use was permissible in the B-3 zoning classification of the property. In turn, the County called witnesses who opined that the proposed use was not permitted because it

would constitute "frequent heavy trucking activity," contrary to the "purpose" section of the B-3 zoning district provisions.

Ruling in favor of Telum, the trial judge stated:

> [T]here is no ambiguity in the section of the ordinance that has been submitted in this case. And the plan by whatever name, whether it's called a truckstop or filling station or fuel stop or, if you will, service station is allowed in B-3 under the ordinance.

In contending that Telum is not entitled to a writ of mandamus because it did not exhaust its administrative remedies, the County cites Code § 15.1-495(a) and Article 8, Section 3 of the Hanover zoning ordinance. Section 15.1-495(a) provides:

> Boards of zoning appeals shall have the following powers and duties:
> (a) To hear and decide appeals from any order, requirement, decision or determination made by an administrative officer in the administration or enforcement of this article or of any ordinance adopted pursuant thereto.

Article 8, Section 3 of the Hanover ordinance vests the county's board of zoning appeals with the power, *inter alia*:

> To hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by an administrative official in the administration or enforcement of this Ordinance.

The County argues that Telum had the "right and obligation" to appeal to the board of zoning appeals the refusal of the county officials to approve and issue the permit Telum sought. It is apparent, the County maintains, that "the legislature, in matters involving zoning, has provided a complete and adequate remedy for the settlement of disputes involving decisions or determinations regarding the interpretation of the [county's zoning] ordinance."

Telum acknowledges the general rule that, where a remedy is provided via an administrative route, the prescribed remedy must be exhausted before a court will act upon a petition for a writ of mandamus. Telum maintains, however, that the general rule is subject to exceptions. One of these exceptions, Telum

states, applies when the issue in dispute may be resolved solely as a matter of law. Here, Telum submits, "it is clear beyond question" that the proposed filling-station use is permitted in a B-3 zone; it is clear also that the trial court found as a matter of law that the proposed use was permissible. Hence, Telum concludes, resort to the board of zoning appeals was unnecessary.

In support of its matter-of-law argument, Telum cites *Supermarkets Oil* v. *Zollinger*, 126 N.J. Super. 505, 315 A.2d 702 (1974), where the operator of a filling station sought to compel issuance of a permit to erect an automatic car wash in a business zoning district. The municipality argued that the operator had failed to exhaust administrative remedies by appealing to the board of adjustment. Answering this argument, the court stated that "where interpretation of a zoning ordinance is called for, the issue is a legal one and is peculiarly suited to the judicial function, and resort need not be first had to administrative remedies." 126 N.J. Super. at 507, 315 A.2d at 703.*

We find this decision unpersuasive. We are not advised what powers New Jersey boards of adjustment possess; from the court's answer to the exhaustion argument, we must assume such boards have no power to interpret the provisions of zoning ordinances. If this assumption is correct, then Virginia law differs materially from the New Jersey rule. If the assumption is incorrect, then, in our opinion, the exhaustion question was decided erroneously by the New Jersey court.

We believe Va. Code § 15.1-495(a) and local ordinance provisions similar to Hanover's Article 8, Section 3 clearly vest Virginia boards of zoning appeals with power to interpret zoning ordinance provisions. And we believe that a zoning applicant in a case involving ordinance interpretation must exhaust administrative remedies by appealing to the appropriate board of zoning appeals before resorting to court action. This requirement of Virginia law is demonstrated by our decision in *Gayton Triangle* v. *Henrico County*, 216 Va. 764, 222 S.E.2d 570 (1976).

In *Gayton*, the plaintiff had purchased a 1.83-acre parcel in a B-3 business zoning district. Later, the county rezoned the land to "PMD," a planned industrial development classification requiring

---

* On brief, Telum states that the matter-of-law exception to the exhaustion requirement "has already been recognized by implication" in this court's decision in *Planning Commission* v. *Berman*, 211 Va. 774, 180 S.E.2d 670 (1971). Exhaustion, however, was not an issue in *Berman*.

a minimum parcel of two acres of land. By-passing administrative remedies, the plaintiff brought an action for declaratory judgment in which it alleged that the rezoning action amounted to an unconstitutional taking of its property without due process of law and without compensation.

We analyzed the plaintiff's allegations to constitute a claim of as-applied unconstitutionality of the two-acre restriction, and we said the restriction could be remedied by a variance granted by the board of zoning appeals. Accordingly, we held that the plaintiff was required to "exhaust adequate and available administrative remedies before [making] a direct judicial attack on the applied constitutionality of the ordinance." 216 Va. at 766, 222 S.E.2d at 572. We reasoned:

Until the administrative procedure is energized and the administrative function called into play, it cannot be said that the zoning power has been fully and finally applied. Accordingly, until these administrative remedies are exhausted [a complaining landowner] has not been finally denied reasonable and proper use of [his] property. . . .

216 Va. at 767, 222 S.E.2d at 573.

Telum correctly points out that *Gayton* involved the power of boards of zoning appeals to grant variances pursuant to Code § 15.1-495(b); however, we believe the rationale of the decision is equally applicable where, as here, the authority vested by § 15.1-495(a) to interpret zoning ordinances is involved. It is self-evident that, if a plaintiff with a claim of unconstitutional application must exhaust administrative remedies before resorting to court action, then another plaintiff with a lesser claim of erroneous interpretation must also follow the administrative route to its specified end.

Telum argues, however, that an appeal to the board of zoning appeals would not have afforded it the relief to which it was entitled. The board had no authority to issue building permits, Telum maintains, and, hence, the suggested remedy would have been "inadequate and of no avail."

In this connection, Telum cites *Bd. Sup. James City County* v. *Rowe*, 216 Va. 128, 216 S.E.2d 199 (1975), and quotes therefrom to the effect that exhaustion is not required where the administrative remedy is not "equal to the relief sought." *Rowe*, however,

involved "a challenge to the constitutionality of a zoning ordinance in its entirety [requiring] a variance providing total exemption [to] vindicate the rights asserted." Such a variance, we said, was "beyond the purport" of the authority conferred upon boards of zoning appeals. 216 Va. at 133, 216 S.E.2d at 205.

While it may be true that the Hanover board of zoning appeals did not possess the authority to issue Telum a building permit directly, the board did have the power to reverse the County Planner and to rule that the use proposed by Telum was permissible in a B-3 business zoning district. Had the board ruled in Telum's favor, the issuance of the building permit would have become "no longer discretionary but ministerial and mandatory," and, upon the Building Official's further refusal to act, Telum would have been entitled to the writ of mandamus it sought prematurely in this case. *Planning Commission v. Berman*, 211 Va. 774, 777, 180 S.E.2d 670, 672 (1971).

For the reasons assigned, the trial court's order directing the issuance of a writ of mandamus will be reversed, and Telum's petition will be dismissed. This action shall be without prejudice to Telum's right to pursue its administrative remedies.

*Reversed and dismissed.*