## CIRCUIT COURT OF LOUDOUN COUNTY

Mountain Venture Partnership
Lovettsville II et al.

v.

Town of Lovettsville
Planning Commission

November 18, 1991

Case No. (Chancery) 13613

BY JUDGE JAMES H. CHAMBLIN

This cause is before the Court on the Bill of Complaint filed by the complainants, Mountain Venture Partnership, Lovettsville II, a Virginia general partnership, and James P. Campbell, Trustee ("Mountain Venture" or "the Applicant"), against the Planning Commission of the Town of Lovettsville, Virginia ("Planning Commission") seeking certain declaratory judgment relief, relief under Section 15.1–475, and the issuance of a Writ of Mandamus. The suit arises out of the denial on April 4, 1991, by the Planning Commission of the preliminary plan of Avonlea Subdivision. The Court heard evidence on October 18, 1991, and took the matter under advisement.

After consideration of the evidence and the memoranda, the Court finds that the remedies of the issuance of a writ of mandamus and declaratory judgment are not available, but that, on the appeal pursuant to the last paragraph of Section 15.1–475, the disapproval by the Planning Commission of the preliminary plan of Avonlea was not based on the applicable ordinance and was arbitrary and capricious. The preliminary plan of Avonlea is ordered approved.

In May, 1990, approximately 46.5 acres of the land within the Avonlea development was rezoned with proffers by the Town of

Lovettsville. The proffers are set forth (less some exhibits referred to therein) on page two of the preliminary plan of Avonlea (Plaintiff's Exhibits No. 1-A and 1-B). The submission by Mountain Venture is labelled "Preliminary Plan," but neither party disputed that it is a preliminary plat as referred to in the applicable Town ordinances. Approximately 16 acres were rezoned to R-1, and approximately 30.5 acres were rezoned to R-3. The area rezoned R-3 is a townhouse development and is the area of dispute in this case.

In July, 1990, Mountain Venture filed its preliminary plan for Avonlea. The area rezoned R-2 provides for 56 single family dwelling lots, and the area rezoned to R-3 contains 194 townhouse lots. From July, 1990, until April 4, 1991, the plan was reviewed by the Planning Commission at various workshops and meetings. There was considerable amount of interchange between the Planning Commission and its advisors and Mountain Venture and its advisors. As a result, various changes were made in the plan as it was originally submitted. On April 4, 1991, at a regular meeting, the Planning Commission voted 4–2 to disapprove the plan (preliminary plat) in the form as introduced into evidence as Plaintiff's Exhibits No. 1-A and 1-B.

Before the vote on April 4, 1991, members of the Planning Commission discussed the application. A motion to approve the preliminary plan died for lack of a second. A verbatim transcript of the part of the meeting shortly before and after the adoption of the motion for disapproval was introduced into evidence. Plaintiff's Exhibit No. 7. At the time Commissioner Barbara Simpson made her motion, she had before her a draft of a resolution previously prepared by the Town Attorney, Karen Donohoe Jewell. Plaintiff's Exhibit No. 14 (except for the handwritten interlineation on the second page).

A few days after the meeting, the Town Attorney had prepared, and Marsha Keim, Vice Chairman of the Planning Commission and the presiding officer at the meeting on April 4, 1991, signed a resolution denying the preliminary plat. Defendant's Exhibit No. 15. The minutes of the meeting of April 4, 1991, as taken, prepared and signed by Brenda Clagett Gillam, Recording Secretary of the Planning Commission, were admitted into evidence as Plaintiff's Exhibit No. 2.

On May 31, 1991, Mountain Venture filed the present suit seeking judicial approval of the preliminary plat.

In June, 1991, the Planning Commission approved a subdivision called Stations at Lovettsville. A portion of this subdivision is zoned R-3 and contains 54 townhouse lots. This subdivision has characteristics similar to Avonlea. It is discussed in more detail later in this opinion.

*Nature of This Proceeding and the*
*Relief Available to the Complainants*

The Bill of Complaint filed by Mountain Venture contains two Counts. The first Count asks for relief in a variety of forms. It seeks a declaratory judgment on certain issues, a mandatory injunction, and relief under Section 15.1–475. The second Count prays for the issuance of a writ of mandamus compelling the Planning Commission to approve the preliminary plat.

While the various forms of relief requested present some interesting procedural questions, I am of the opinion that this case should be considered as an appeal of a disapproval of a preliminary plat under the last paragraph of § 15.1–475, which provides:

> If a local commission or other agent disapproves a preliminary plat and the subdivider contends that such disapproval was not properly based on the ordinance applicable thereto, or was arbitrary or capricious, he may appeal to the circuit court having jurisdiction of such land, and the court shall hear and determine the case as soon as may be, provided that his appeal is filed with the circuit court within sixty days of the written disapproval by such local commission or other agent.

Declaratory judgment relief under § 8.01–184 *et seq.* is available only after the exhaustion of adequate and available administrative remedies. *See, Gayton Triangle Land Co. v. Board of Supervisors,* 216 Va. 764 (1976). The power to make a declaratory judgment should not be exercised where some other mode of proceeding is provided. *Liberty Mutual Ins. Co. v. Bishop,* 211 Va. 414, 421 (1970). Here Mountain Venture has another mode of proceeding, i.e., under the last paragraph of § 15.1–475.

If the request for a mandatory injunction directing the Planning Commission to approve the preliminary plat is a part of the requested declaratory judgment relief, then it is not available for the reasons

just stated. If the mandatory injunction request is under § 15.1–499 (an injunction to restrain a violation of Chapter 11, Title 15.1, or a town subdivision regulation adopted thereunder (see specifically § 15.1–465 requiring all towns to adopt a subdivision ordinance), then it is still not available because § 15.1–475 provides for the specific relief requested by Mountain Venture. Further, disapproval of a preliminary plat is not, in and of itself, a violation of a town ordinance. Section 15.1–499 injunctions are available to restrain, correct, or abate a violation or an attempted violation of a town ordinance. There is no town ordinance that requires the Planning Commission to approve the Avonlea preliminary plat.

Mandamus is not an appropriate remedy in this case. Mandamus may not be granted to redress the past privation of a right or the restoration of a right in the future. Its purpose is to command and not to correct an erroneous decision. *See, e.g., Board of Supervisors v. Combs*, 160 Va. 487 (1933). Mandamus is an extraordinary remedy used to compel a public official to perform a purely ministerial duty imposed on him by law, and, if the public official is vested with discretion or judgment, then his judgments are not subject to review by mandamus. *Richlands Medical Assoc. v. Commonwealth*, 230 Va. 384, 386 (1985).

As it invariably occurs in land use mandamus cases, Mountain Venture cites *Planning Commission v. Berman*, 211 Va. 774 (1971), and *Prince William County v. Hylton Enterprises*, 216 Va. 582 (1976), as authority that a writ of mandamus is a proper remedy. While there may be some disagreement among the judges of this Circuit as to the parameters of a writ of mandamus in light of *Berman* and *Hylton*, this judge is of the opinion that *Berman* represents, at best, a very narrow judicially carved exception to general mandamus principles, or at worst, just plain bad law, and *Hylton* does not represent a departure from such principles.

The distinction of *Berman* is not merely because the planning commission "failed to approve the site plan," 211 Va. at 775, as opposed to denying it. The record in *Berman* clearly discloses that the plan was denied. In *Berman* the planning commission did not challenge the availability of mandamus as a remedy. The trial court found that the site plan denial in *Berman* was not predicated on the failure of the applicant to comply with the applicable ordinances, but "because of a desire of the Planning Commission to forestall the

further proliferation of free standing franchise restaurants on West Broad Street." 211 Va. at 776. It further found that the applicant "had complied with all provisions of the ordinances of Falls Church and the usual procedures and requirements or were ready, willing, and able to comply." 211 Va. at 777. The Supreme Court affirmed the trial court's findings and went further to state:

> Under such circumstances, approval of the site plan and issuance of a permit were no longer discretionary but ministerial and mandatory. Mandamus was a proper remedy to require the relief sought from the city officials. 211 Va. at 777.

*Berman* merely is a case where a planning commission denied a site plan for a reason other than a failure to comply with applicable ordinances.

*Berman* involved a site plan, not a subdivision. Section 15.1–466(F) requiring that submission and approval of site plans are subject to the subdivision provisions of that Section was not adopted until 1990. When *Berman* was decided, site plans and subdivision plans were not treated the same under the enabling statutes. As a general proposition, the approval of a site plan is more ministerial than the approval of a subdivision.

*Berman* represents a case in which a correct result is reached, but because of (1) the nature of the proceeding (petition for writ of mandamus), (2) there being no procedural objections, and (3) the language about mandamus being a proper remedy being *dictum,* it raises some doubt as to the time-honored parameters of mandamus. *Berman* is a case that should rest only with its unique facts and procedural history. Its precedential value on the issue of mandamus is minimal to nonexistent.

*Hylton,* on the other hand, is a classic mandamus case which, unfortunately, repeats the above *dictum* from *Berman.* 216 Va. at 585. *Hylton* concerned only an order of a trial court requiring the Director of Public Works of Prince William County to do his official duty, i.e., report his recommendations to the Board of Supervisors and requiring the Board to approve or disapprove the subdivision applications within certain time periods. The trial court merely ordered public officials to act but declined to dictate results of the action. 216 Va. at 585. It is of further interest that when the Board disapproved certain subdivision plats of the same applicant, it sought relief under

§ 15.1–475 and not by writ of mandamus. *Hylton v. Prince William County*, 220 Va. 435 (1979).

For the foregoing reasons, the only relief available to, and the only relief actually needed by, the Applicant is under the last paragraph of § 15.1–475. The extent of the relief available is addressed below.

*Extent of Relief under the Last*
*Paragraph of Section 15.1–475 for*
*Disapproval of a Preliminary Plat*
*by a Planning Commission*

The last paragraph of § 15.1–475 was adopted in 1989. Prior thereto any appeal by statutory right lay only to the disapproval of a final subdivision plat. *See* fourth paragraph of § 15.1–475. The language of the last paragraph follows verbatim the language of the fourth paragraph except that it applies to preliminary plats. The language of the fourth paragraph has been held to be sufficiently broad enough to enable a trial court to approve a final subdivision plat. *Hylton*, 220 Va. at 442. *See also, West v. Mills*, 238 Va. 162 (1989).

But § 15.1–475 does not give the circuit court the authority to substitute its judgment for that of the planning commission. Under § 15.1–475, the trial court's review is limited to a determination whether the Planning Commission's disapproval of the Avonlea preliminary plan was "not properly based on the ordinance applicable thereto or was arbitrary and capricious." *See, West*, 238 Va. at 168.

If the Court finds that the disapproval was not properly based on the applicable ordinances or was arbitrary or capricious, then the Court will approve the preliminary plan. If the Court finds that the disapproval was properly based on applicable ordinances and was not arbitrary or capricious, then it will sustain the disapproval.

*Compliance with Requirements of Seventh*
*Paragraph of Section 15.1–475*

Although § 2.3.2 of the Lovettsville Subdivision Ordinance ("LSO") merely provides that if the Planning Commission disapproves a preliminary plat, then it should state its reasons therefor, the seventh paragraph of Section 15.1–475 goes further and provides:

> If a planning commission has the responsibility of review
> of preliminary plats and conducts a public hearing, it shall

act on such plat within forty-five days after receiving approval from all state agencies. If the local agent or commission does not approve the preliminary plat, the local agent or commission shall *set forth in writing the reasons for such denial and shall state what corrections or modifications will permit approval* by such agent or commission. (Emphasis mine.)

The Planning Commission is required to comply with the statute and upon a disapproval not only to state in writing its reasons but also state what modifications or corrections are needed to permit approval.

Before the commencement of the hearing on October 18, 1991, Mountain Venture filed a Motion in Limine asking the Court to (1) not admit any evidence to impeach the minutes of the Planning Commission meeting (Plaintiff's Exhibit No. 2), (2) determine that whether or not the disapproval was properly based on the ordinances is limited to the minutes, and (3) not admit the tape recordings of the meeting (Plaintiff's Exhibit No. 8) except as to the arbitrary and capricious issue. The court declined to rule on the Motion in Limine because the motion involved evidentiary matters which are more properly addressed during the hearing. Also the issues raised by the Motion in Limine are so intricately connected with the major issues which this Court must decide that the Motion in Limine is subsumed by the rulings on the issues in this case. Therefore, the Motion in Limine is not ruled on specifically, and the issues raised thereby are all addressed in the rulings set forth herein.

### Failure of the Planning Commission to State in Writing What Corrections or Modifications Will Permit Approval of the Avonlea Preliminary Plat As Required by Section 15.1–475

It is clear that whatever may have been the "writings" of the Planning Commission relating to this application, it never stated what corrections or modifications will permit approval. This is a violation of the mandate of Section 15.1–475, but the remedy for the violation is not an approval by default or a declaration that the disapproval is null and void. If the disapproval is sustained, then the appropriate remedy would be a mandatory injunction under § 15.1–499 to require the Planning Commission to state in writing such corrections

or modifications. Also, a writ of mandamus may lie to compel the Planning Commission to do its official and statutorily required duty of stating in writing what corrections or modifications will permit approval of the preliminary plat. If the Court approves the preliminary plat, then the failure to state the corrections or modifications is a moot point. Further, the failure to state in writing such corrections or modifications is not a matter reviewable under the last paragraph of Section 15.1–475 because such failure has nothing to do with whether such disapproval was properly based on applicable ordinances. Further, such failure does not tend to show that the disapproval was arbitrary and capricious. Finally, Mountain Venture has not asked the Court to compel the Planning Commission to state in writing such corrections or modifications.

*What Are the Written Reasons for the Denial*
*of the Avonlea Preliminary Plat as Required*
*by Section 15.1–475?*

Section 15.1–475 requires the Planning Commission to set forth in writing the reasons for such denial, but it does not state the means by which it is to be done. If the Planning Commission does not state its reasons in writing, then it is a violation of § 15.1–475, and an injunction or writ of mandamus would lie to compel it to state its reasons for disapproval in writing. Such failure is not a ground for judicial approval by default or a declaration that the disapproval is null and void. However, it is important to determine such reasons because they serve as the basis for the Court's determination of the case on an appeal under § 15.1–475.

No evidence was presented of exactly what the Planning Commission intended to serve as the written reasons required by § 15.1–475. It is not a question of what constitutes "a complete record of its proceedings . . ." as required by § 15.1–444(d). The Planning Commission tape records each meeting. The tapes are saved and not re-used. The Planning Commission uses the tapes to review its acts. The recording secretary draws the minutes of each meeting, and they are typically approved at the next meeting. However, there was no evidence that the minutes of the meeting of April 4, 1991, were approved at the next meeting. On the other hand, Commissioner Simpson testified that the minutes drawn by the recording secretary and submitted in evidence as Plaintiff's Exhibit No. 2 are "accurate minutes" reflecting the actions of the Planning Commission.

This issue is complicated because there are references to what could be considered as reasons for the disapproval in four different places, as follows:

1. The draft resolution prepared by the Town Attorney (Defendant's Exhibit No. 4, excluding the handwritten interlineation of the second page) which Commissioner Simpson had before her when she made the motion for disapproval at the meeting of the Planning Commission on April 4, 1991. ("Draft Resolution").

2. The actual verbatim motion made by Commissioner Simpson at the meeting as set forth in the transcript of the meeting (Plaintiff's Exhibit No. 7) ("Verbatim Motion").

3. The references to the motion in the minutes of the meeting (Plaintiff's Exhibit No. 2) prepared and signed by the Recording Secretary ("Minutes").

4. The written resolution prepared by the Town Attorney, signed several days later by the Vice Chairman of the Planning Commission who had presided over the meeting, and made a part of the record of the Planning Commission. Defendant's Exhibit No. 15 ("Written Resolution").

The reasons stated in each of the four sources are not consistent, as follows:

1. The reasons stated in the Draft Resolutions are (a) inadequate fire lanes, (b) unsuitable stormwater management, and (c) no provision for public streets in the townhouse section, or, alternatively, private streets which meet the standards of the Virginia Department of Highways.

2. The reasons stated in Commissioner Simpson's Verbatim Motion are (a) "public access easements," (b) "the stormwater management of the property," (c) "a lump sum fee for improvements on Quarter Branch Road," and (d) "adequate provision is not made for off-site road improvements."

3. The Minutes state the reasons as (a) "public access easements," (b) "the stormwater management of the property," and (c) "does not adequately provide for off-site road improvements made reasonably necessary by this project."

4. The Written Resolution includes as reasons the three reasons recited in the Draft Resolution plus a (d) which is the same as (c) as stated in the Minutes.

In order for the reasons in writing requirement to have any legitimate meaning and effect, the reasons must (1) be the reasons ex-

pressed by the collective action of the members of the Planning Commission, (2) be clearly communicated to the applicant so that he knows exactly why the plat was not approved, and (3) be in writing. Considering these requirements, the evidence presented and the way the parties chose to try this case, the Court finds that the reasons for disapproval as required by the seventh paragraph of § 15.1–475 are the three reasons expressed in the Minutes.

Although this Court would have no hesitancy in finding that the Planning Commission did not set forth in writing the reasons for the denial and the corrections or modifications as will permit approval as required by the aforesaid Code Section, it does not need to do so. As stated above, a failure to do so would only result in a direction by the Court to the Planning Commission to do its statutory duty in an injunction proceeding under § 15.1–499 or by writ of mandamus. By pursuing its request that the Court act to approve the preliminary plat and by its Motion in Limine, Mountain Venture impliedly admitted that the Minutes represent the action of the Planning Commission and waived any claim that the Minutes did not clearly state to it why the plat was denied. The Motion in Limine asks that the issue of whether or not the disapproval was based on the applicable ordinances be limited to the Minutes. Mountain Venture's position makes any lack of proof of adoption of the Minutes at a later meeting irrelevant.

A planning commission acts as a body. Its acts cannot be evidenced by a writing prepared later by its attorney and signed later by the presiding officer unless it actually reflects what the planning commission voted upon. Here the four members voted to deny the plat after hearing only the four reasons stated in the Verbatim Motion of which only three were incorporated in the Minutes. The Minutes constitute a writing. The Verbatim Motion is not in writing. This ruling eliminates any inadequacy in the fire lanes as a factor to be considered by this Court.

Having determined the reasons for the denial, the Court will now proceed to examine each reason to determine whether it is properly based on the applicable ordinances or is arbitrary or capricious.

### *"Public Access Easements"*

In her testimony as a witness called by Mountain Venture, Commissioner Simpson said that in making the disapproval motion and

giving the reason of "public access easements," she meant that the LSO prohibits private streets and that it was unsafe for 194 townhouse units to access only one public street at only two points. Therefore, each of these assertions must be examined.

The written reasons required by § 15.1–475 forms the basis for the Court's determination on an appeal of the disapproval of a preliminary plat. The phrase "such disapproval" means that on appeal, a circuit court examines the disapproval and the reasons therefor in order to determine if the disapproval was properly based on applicable ordinances or was arbitrary or capricious. If reasons for disapproval not set forth in writing could be considered by a circuit court on appeal, then it would place the court in a position to exercise the same authority as a planning commission and would violate the doctrine of separation of powers. The purpose of an appeal under § 15.1–475 is not for a circuit court to substitute its judgment for that of the planning commission but is one for a judicial review of the legality of the denial in the two areas mentioned above.

According to the preliminary plan of Avonlea and the other submissions to the Town, the streets or travelways in the townhouse area are considered parking areas. None of the townhouse lots front on public streets. There are no public streets within the interior of the townhouse section. The street design for the townhouses are "all private driveways" with travelways 25 feet in width.

An absolute prohibition of private streets or private access easements in subdivisions cannot be found in either the Lovettsville Zoning Ordinance ("LZO") or the LSO. Certain provisions in each ordinance do mention private streets and private access easements. However, there is no mention of "public access easements."

LZO § 10–2.45 defines a "lot" as a "parcel of land . . . which has frontage on a street *or an officially approved private means of ingress and egress*." (Emphasis mine.) LZO § 10–2.75 defines a "street" as a "public thoroughfare, except an alley or driveway, which affords vehicular traffic circulation and principal means of access to abutting property." Under the LZO, a lot can front on a private means of ingress and egress, and the definition of street does not exclude a private street. A private street can be open to the public, i.e., a "public thoroughfare," can "afford vehicular traffic circulation," and can be a "principal means of access to abutting property." The LZO does not prohibit private streets.

LSO § 3.1.7 provides:

> There shall be no private streets created in any subdivision or development which do not meet public street required specifications.

This is not a prohibition of private streets but allows them if they meet public street specifications. Lovettsville has no ordinance that provides for "public street required specifications" or for private street specifications. LSO § 3.1.5 provides for minimum right of way widths for streets "unless otherwise required by the Department of Transportation or Planning Commission." It is not an absolute minimum right of way width requirement.

LSO § 7.13 defines a "street" as a "public way for the passage of vehicles and pedestrians and giving primary access to abutting property." The definition is similar to the one found in LZO § 10–2.75. The LSO definition of "street," like the LZO definition, does not exclude a private street.

LSO § 3.3.9 provides:

> Every lot shall front on an approved street, except as otherwise permitted herein (Article III.2).

Article III.2 concerns private access easements which are clearly not applicable to the townhouse section of Avonlea. This section does not state that all subdivision lots have to front on public streets because the definition of street in the LSO does not exclude private streets.

The LSO does not prohibit private streets or private travelways. The Planning Commission must have recognized this when it approved the plat of Stations at Lovettsville which provided for private travelways of the same width (25 feet) in the townhouse section as provided for in Avonlea's townhouse section.

A denial of the Avonlea preliminary plat because it contains private streets is not based on either the LZO or the LSO. Further, in light of the subsequent approval by the Planning Commission of a townhouse subdivision with private streets or travelways, the denial on such basis is arbitrary and capricious.

The townhouse portion of Stations at Lovettsville has 54 townhouse units with two access points to a public street. Avonlea with its 194 townhouse units also has two access points to a public street. Based on Commissioner Simpson's thoughts as apparently adopted

by the Planning Commission, 54 units is safe but 194 units is not. The Virginia Department of Transportation ("VDOT"), one of the referring agencies, raised no concern about the safety of the street arrangement for the townhouse section of Avonlea. There is no Town ordinance concerning the number of vehicular trips which a subdivision may be allowed to generate. There is no ordinance regulating the number of townhouse units per entrance to a public street. There is no ordinance relating design criteria for streets to the number of vehicles passing over a street. VDOT raised no objection to the entrances from the townhouse area of Avonlea onto the public street of Keister Drive, as shown on the preliminary plan. The proffers approved when the townhouse section was rezoned to R-3 clearly put the Town and all its officials on notice that Mountain Venture could seek approval for as many as 194 townhouse units. *See* Proffer 2. The proffers also provided that the applicant would "construct all streets and roadways for the project . . . in accordance with VDOT standards." Proffer 3d. VDOT reviewed the preliminary plan, and it did not state that the plan did not follow its standards.

Proffer 3d also provides that the "parking areas within the townhouse development will be private and will be owned and maintained by the homeowner's association." The preliminary plan of Avonlea conforms to this proffer.

The Planning Commission offered no justification for a decision that 194 units is unsafe while 54 units is safe. With no ordinance to guide the Planning Commission, if this reason were valid, then an applicant with a subdivision such as Avonlea would be at the mercy of the Planning Commission. Its whim could determine whether a preliminary plat is approved or denied. While one of the purposes of a subdivision ordinance is to promote the safety of the public, *see* LSO § 1.2, such purpose does not give a planning commission the authority to deny a preliminary plat which conforms to the requirements of applicable ordinances for the sole reason that in its opinion alone, the subdivision would create a public safety problem. None of the agencies to which the preliminary plan was referred to review by the Planning Commission raised this safety issue. The denial by the Planning Commission of the preliminary plat because 194 units served by two access points to a public street creates a safety problem was arbitrary and capricious.

*Stormwater Management of Property*

Commissioner Simpson testified that she used the phrase "stormwater management of property" in her motion to mean that there was a safety concern because of an excessive number of stormwater management ponds and the ponds were too close to the townhouses and the tot lots. The ordinances do not address stormwater management except for "one small thing" per Bryant. His uncontradicted testimony was that all applicable laws have been followed for the stormwater management ponds. Therefore, a denial based on the stormwater management of the property is not based on applicable ordinances. Further, for the same reasons as explained above as to the safety issue of 194 units served by two access points to a public street, a denial based solely on the opinion of the Planning Commission alone as to the safety of a stormwater management system that meets all applicable laws is arbitrary and capricious.

*Does Not Adequately Provide for Off-Site Road*
*Improvements Made Reasonably Necessary by This Project*

In her testimony, Commissioner Simpson admitted that this reason was not something that could be demanded but was only something that the Planning Commission could request. As can be seen from the Verbatim Motion, she was referring to Quarter Branch Road, and she was actually asking Mountain Venture to pay a "lump sum fee" for improving the road. VDOT did not request any improvements to Quarter Branch Road. Mountain Venture agreed to all the recommendations from VDOT as to improvements of Route 287. Counsel for the Planning Commission conceded in final argument that it did not have the authority to demand payment for off-site road improvements, but it could accept such a payment under § 15.1–466 if voluntarily offered by the applicant. *See, Hylton v. Prince William County*, 220 Va. 435 (1979) (superseded somewhat by subsequent amendments to § 15.1–466). There is no ordinance allowing the Planning Commission to require the applicant to provide for off-site road improvements.

This reason for disapproval is not properly based on either the LZO or the LSO.

*Conclusion*

For the foregoing reasons, the Court on the appeal of Mountain Venture pursuant to the last paragraph of Section 15.1-475 orders that the preliminary plan of Avonlea (Plaintiff's Exhibits No. 1-A and 1-B) be approved.