257 N.J. Super. 382 (1992)
608 A.2d 469
FRANK PAGANO AND TOM ZECCHINO T/A T & F OUTDOOR SPORTS, PLAINTIFFS,
v.
ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF EDISON, DEFENDANT.
Superior Court of New Jersey, Law Division Middlesex County.
May 1, 1992.
*385 Bernard H. Shihar, for the plaintiffs (Convery, Convery, Shihar, attorneys).
Karl R. Lawnick, for the defendant.
WOLFSON, J.S.C.

I. Factual Background
Plaintiffs Frank Pagano and Tom Zecchino (trading as T and F Outdoor Sports) appeal from the September 17, 1991 resolution of the Zoning Board of Adjustment of the Township of Edison (the "Board") denying their application for a use variance to permit the utilization of the portion of premises located at 523 Raritan Center Parkway for a pistol range and for retail sales of hunting and fishing supplies.[1] The subject property is located in the L-I (PUD) zone which allows neither the pistol range nor retail sales.[2] A public hearing was held on June 18, 1991, at which the applicants provided the testimony of Frank *386 Pagano (one of the partners of T and F Outdoor Sports) and Jack Giordano (a Port Authority police officer and National Rifle Association (NRA) certified firearms instructor) in support of the variance request.
Mr. Pagano testified[3] that the applicants were licensed to sell firearms by both Federal and State authorities as would be all employees, and that these requirements would be continually monitored by Municipal, State, and Federal authorities. Though not a planner, he opined that the proposed location for the pistol range, in the Raritan Center, was an appropriate site due to its location away from residential areas, while being convenient to Edison residents who presently must travel to other municipalities to engage in recreational shooting. He also concluded that the operation of the pistol range was safe, noting as follows:
No more than one individual would utilize a shooting stall at one time;
NRA certified officers would provide instruction and insure range safety;
Range safety equipment would be installed according to the specifications of Detroit Armory, an experienced company in the installation of range safety equipment;
Special security arrangements, including a vault for the storage of the firearms, electronic sensors, as well as direct emergency access to the local police department, would be installed.
In response to concerns about the noise levels that would be generated by the proposed use, Pagano explained:
Inside the range, hearing protection (as well as eye protection) would be mandatory through the use of special equipment;
Soundproofing would be required within the facility;
Little, if any, noise would be discernible outside the range, and that the existing mechanic shop, which shared the existing structure, would be louder;

*387 That any requirements of the health department in this context would be addressed and satisfied.[4]
The next witness was Jack Giordano, a Port Authority police officer and NRA certified firearms instructor, who testified as follows:
The shooting range installation company, (Detroit Armory) would use "state of the art" equipment and techniques and has been recognized as being safe, clean and otherwise desirable insofar as such ranges are concerned.
The U.S. government estimates that 70 million Americans own firearms and that there is a firearm in one out of every two homes.
From 1968 to 1988 firearms accidents dropped 52 percent, primarily because of places to shoot, practicing and increased effectiveness of safety programs and training.
Legal shooting ranges enhance the safety of persons both outside and within as contrasted against the discharge of firearms in a basement or outdoors.
The patrons of the range would most likely come from Edison although some would come from other areas.
The patrons would likely be good citizens.
Many police officers would utilize the range since they do not have a facility available on their own time.
Training would be provided to all employees working the range as NRA certified firearms instructors.
Several citizens also testified both in favor of and in opposition to the proposed use, although such testimony for the most part, lacked an adequate factual foundation, representing mere "opinions" or "feelings".[5]
The public hearing was closed on August 20, 1991. Following the Board's deliberations the application was denied four *388 votes to three. A resolution memorializing this decision was adopted on September 17, 1991, which essentially concluded:
(1) that the applicants had failed to establish "special reasons" as a matter of law;
(2) that the use variance, if granted, would result in substantial detriment to the public good and would substantially impair the intent and purpose of the Township's master plan and zoning ordinance; and
(3) that the applicant failed to reconcile the proposed pistol range with the omission of this type of use from the L-I zone or any other district within the Township.[6]

II. Scope of Review
In reviewing any decision of a zoning board, the court's power is tightly circumscribed. In recognition of the fact that local officials are "thoroughly familiar with their communities' characteristics and interests and ... are undoubtedly the best equipped to pass initially on such applications for variances," Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954), the Board's decisions are cloaked with a presumption of validity, which presumption attaches to both their acts and their motives. Public bodies, because of their peculiar knowledge of local conditions, are thus allowed wide latitude in the exercise of the *389 discretion delegated them under the Municipal Land Use Law. N.J.S.A. 40:55D-1 et seq.
So long as there is substantial evidence to support it, the court may not interfere with or overturn the decision of a municipal board. Even when doubt is entertained as to the wisdom of the board's action, or even as to some part of it, there can be no judicial declaration of invalidity absent a clear abuse of discretion by the board. Consequently zoning determinations may be set aside only when the court has determined the decision to be arbitrary, capricious or unreasonable. Medici v. BPR Co., 107 N.J. 1, 15, 526 A.2d 109 (1987); Kramer v. Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965).

III. The Merits of the Variance Application
Under N.J.S.A. 40:55D-70(d), a use variance may be granted upon: a) an affirmative showing of "special reasons" (the "positive criteria"); together with b) a showing that the variance, if granted, will not result in substantial detriment to the public good and will not substantially impair the intent and purpose of the zone plan and zoning ordinance (the "negative criteria").
In Kohl v. Fair Lawn, 50 N.J. 268, 234 A.2d 385 (1967), and more recently in Medici, supra, the Supreme Court articulated the principles and standards to guide this court in determining whether, pursuant to this statutory scheme, a use variance may be granted.
Applying these standards, the Board's decision in this case was plainly deficient in several respects. Not only did the Board fail to provide a sufficient factual basis for rejecting the applicants' purported special reasons and their claimed satisfaction of the negative criteria, but it committed several legal errors as well. For the reasons set forth below, the resolution of September 17, 1991 must be vacated and the matter remanded for further proceedings not inconsistent with this opinion.

*390 A. The Positive Criteria  Special Reasons

As was recognized long ago in Grimley v. Ridgewood, 45 N.J. Super. 574, 581, 133 A.2d 649 (App.Div. 1957), "special reasons" is a flexible concept and no precise formula is feasible. Accordingly, each case must turn on its own facts and circumstances. Kohl v. Fair Lawn, supra, 50 N.J. at 276, 234 A.2d 385; Degnan v. Monetti, 210 N.J. Super. 174, 182, 509 A.2d 277 (App.Div. 1986). The "special reasons" standard has generally been defined in relation to the purposes of zoning (N.J.S.A. 40:55D-2), emphasizing the promotion of the general welfare as the zoning purpose that most clearly exemplifies its meaning. Medici, supra, 107 N.J. at 18, 526 A.2d 109.
The Supreme Court has repeatedly held that the special reasons standard is satisfied as a matter of law by uses which inherently serve the general welfare.[7]See Sica v. Bd. of Adj. of the Tp. of Wall, 127 N.J. 152, 603 A.2d 30 (1992) (private head trauma facility); Andrews v. Ocean Tp. Board of Adjustment, 30 N.J. 245, 249, 152 A.2d 580 (1967) (education of children); DeSimone v. Greater Engelwood Housing Corp., 50 N.J. 428, 440, 236 A.2d 138 (1970) (quasi-public housing).
Where the use is not of the type which inherently benefits the general welfare,[8] special reasons to support a use *391 variance may be established by a finding that the general welfare is served because the use is peculiarly fitted to the particular location for which the variance is sought.[9]Medici, supra, 107 N.J. at 4, 18, 24, 526 A.2d 109; Kohl, supra, 50 N.J. at 279-280, 234 A.2d 385.
Plaintiffs' contention is that special reasons were established here because two of the expressed purposes of zoning, e.g. promotion of the general welfare and provision of adequate recreational facilities, would be advanced by this use.[10] However, the record is devoid of any proof demonstrating that the general welfare was advanced due to the location of the pistol range at that site. Even though the general welfare may admittedly be advanced by the proposed use, absent proof that the general welfare would not similarly be advanced by locating the pistol range at other locations,[11] or proof that no other *392 suitable sites exist, the applicants could not be said to have satisfied their burden of establishing the particular suitability of the Raritan Center site for the proposed use.[12] Indeed, as cautioned by the Supreme Court in Kohl, supra:
[I]f the general social benefits of any individual use  without reference to its particular location  were to be regarded as an adequate special reason, a special reason almost always would exist for a use variance. Id. 50 N.J. at 280, 234 A.2d 385.
At best, the site was a "convenient" location for Edison Township residents and was sufficiently distant from residential or other developed areas so as to diminish the likelihood of danger or noises attributable to the use.[13]
Nonetheless, the Board's resolution in this case does not reflect the deliberative and specific findings of fact necessary to sustain its conclusions. See Medici, supra, 107 N.J. at 25, 526 A.2d 109; See also, Harrington Glen, Inc. v. Mun. Bd. of Adj. of Bor. of Leonia, 52 N.J. 22, 28, 243 A.2d 233 (1968); and compare Griffin Const. Corp. v. Bd. of Adjust. of Teaneck, 85 N.J. Super. 472, 477, 205 A.2d 313 (App.Div. 1964), certif. den., 44 N.J. 408, 209 A.2d 143 (1965) (denial of variance not automatically sustainable upon a perfunctory finding, phrased in the conclusionary language of the statute that the applicant failed to satisfy its burden, unless grounded in evidence supportive of the substance of such conclusion). Other than the conclusionary *393 recitation in its resolution that the proposed use was neither inherently beneficial nor particularly suited to the proposed site, no findings of fact, predicated upon factual support in the record, were made.
Because both the record and the Board's resolution are inadequate for reasons hereafter expressed,[14] the matter will be remanded to permit the applicants, if they so desire, to supplement the record before the Board, and to permit the Board to adopt new findings and conclusions. See Medici, supra, 107 N.J. at 26, 526 A.2d 109.

B. The Negative Criteria

In addition to proof of special reasons, N.J.S.A. 40:55D-70(d) also requires an applicant for a use variance to establish that the requested relief can be granted without substantial detriment to the public good (known as the first prong of the negative criteria) and will not substantially impair the intent and purpose of the zone plan and zoning ordinance (the second prong). See Medici, supra, 107 N.J. at 22, 526 A.2d 109.

1. The First Prong

As explained in Medici, supra, 107 N.J. at 22, n. 12, 526 A.2d 109, the Supreme Court intended no change in the proof required to satisfy the first prong of the negative criteria  that the variance can be granted "without substantial detriment to the public good." Consequently, the Board is required to evaluate the impact of the proposed use variance upon adjacent properties and to determine whether the proposed use will cause such damage to the character of the neighborhood as to constitute "substantial detriment to the public good." Id. (Emphasis supplied). See also, Yahnel v. Bd. of Adj. Jamesburg, *394 79 N.J. Super. 509, 519, 192 A.2d 177 (App.Div. 1963), certif. den., 41 N.J. 116, 195 A.2d 15 (1963).
Although the Board concluded that the requested relief could not be granted without substantial detriment to the public good, the resolution is utterly devoid of any factual findings upon which its conclusory incantation of the statutory language could have been based. A review of the record discloses that substantial, uncontroverted testimony was offered in support of the first prong of the negative criteria.
As established by that testimony, the location of the proposed use substantially reduced the likelihood of any negative impact, much less a substantial one, to the surrounding properties. The proposed use was to be located in an industrial park, in which a variety of recreational uses (although not the proposed use) were permitted under the ordinance. No residential properties were in close proximity. Likewise, expert testimony regarding the acceptability of noise levels expected to be generated by the pistol range was factually substantiated by the favorable comparison to the higher noise levels being generated by existing uses on the site.
Also relevant, was the applicants' ability to deal effectively and efficiently with the disposal of the spent lead cartridges, considered a hazardous material by the D.E.P.E. Again, the expert testimony explaining the procedures by which this material would be safely removed was neither contested nor questioned by the Board. Were this a legitimate issue, the Board could easily have guarded against any danger by imposing a condition requiring disposition by a (D.E.P.E.) licensed hauler to remove the material and full compliance with all applicable environmental regulations. See N.J.S.A. 40:55D-22(b).[15]
*395 Finally, the Board's stated concern regarding the potential illegal transportation of firearms, although arguably encompassed within a broad interpretation of the negative criteria, was speculative at best, not sufficiently grounded on any finding of fact, legally irrelevant and ultra vires. See N.J.S.A. 40:55D-65.[16]

2. The Second Prong

In Medici, supra, the Supreme Court also required "an enhanced quality of proof and clear and specific findings" that the variance sought is not inconsistent with the intent and purpose of the master plan and zoning ordinance. As noted by the Court:
the applicant's proofs and the board's findings that the variance will not "substantially impair the intent and purpose of the zone plan and zoning ordinance," N.J.S.A. 40:55 D-70(d), must reconcile the proposed use variance with the zoning ordinance's omission of the use from those permitted in the zoning district.
* * * * * * * *
The board's resolution should contain sufficient findings, based on the proofs submitted, to satisfy a reviewing court that the board has analyzed the master plan and zoning ordinance, and determined that the governing body's prohibition of the proposed use is not incompatible with grant of the variance.... To the extent this requirement narrows the discretion of boards of adjustment to grant use variances for uses intentionally and persistently excluded from the zoning ordinance by the governing body, we believe it accurately reflects the strong legislative policy favoring zoning by ordinance rather than by variance. Id. 107 N.J. at 21, 23, 526 A.2d 109.
In applying the negative criteria to this case, however, the Board relied not upon the zoning ordinance and master plan, *396 but rather, upon the general code of the Township of Edison, sec. 27-1, which essentially prohibits pistol ranges anywhere within the Township. In doing so, the Board concluded that the applicants could not reconcile the proposed pistol range with the Code's specific prohibition of that use, and as such, could not satisfy the second prong of the negative criteria as a matter of law.
The novel issue raised in this case then, is whether a zoning board is thus empowered to reach beyond the four corners of the zoning ordinance and master plan in determining whether an applicant has satisfied the negative criteria.
In this regard, the Board argues that the existence of ordinance 27-1 which prohibits the discharge of firearms except at "a licensed pistol, rifle or firearm range and under the supervision of the police department of the Township of Edison," is conclusive proof of the governing body's intentional omission of the use from the zoning ordinance and thus dispositive of the reconciliation issue.
As noted by the Supreme Court in Medici, the nature of the proofs offered to achieve reconciliation of the proposed variance with a zoning ordinance "will depend on the circumstances of each case." Medici, supra, 107 N.J. at 21, n. 11, 526 A.2d 109. There the Court set forth a number of examples, "offered merely to illustrate, and not to exhaust, the nature of the proofs that could be offered to reconcile a proposed use variance with the provisions of the zoning ordinance." Id.
The question of whether ordinance 27-1 precludes the applicants from satisfying the second prong of the negative criteria as a matter of law must be decided by this court, Jantausch v. Bor. of Verona, 41 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956) aff'd 24 N.J. 326, 131 A.2d 881 (1957), the interpretation of an ordinance being a subject essentially within the province of the courts. Grancagnola v. Pl. Bd. of Twp. of Verona, 221 N.J. Super. 71, 75-76, 533 A.2d 982 (App.Div. 1987). Any agency's determination with regard to a question of law is *397 thus subject to a de novo review by the courts. Id. at 75-76, n. 5, 533 A.2d 982. This is especially significant here, where the Township attorney has opined that the proposed use falls within the exceptions available under ordinance 27-1.
Under the circumstances of this case, where reconciliation depends not upon a demonstration of substantial changes in the needs and character of the neighborhood, which require factual determinations by a zoning board, but rather upon the Board's legal interpretation, judicial deference is not required, since a zoning board has "no peculiar skill superior to the courts'" regarding purely legal matters. Jantausch, supra, 41 N.J. Super. at 96, 124 A.2d 14; Grancagnola, supra, 221 N.J. Super. at 75-76, 533 A.2d 982.
Although a literal reading of the Medici opinion might support an argument that resort to matters or information beyond the four corners of the zoning ordinance or master plan is inappropriate, a fair reading of Medici generally, and footnote 11 specifically, compels a less restrictive view.
This court therefore concludes that neither the Board, the applicant nor the court are restricted to the zoning ordinance and master plan in seeking to glean whether the governing body's omission of a proposed use was inadvertent or deliberate. The parties must be permitted to rely upon whatever probative information exists, whether it be legislative history, records of public hearings associated with the adoption or amendment of a zoning ordinance or master plan, or any other formal action, decision, or refusal to act in determining the governing body's intent.
Having concluded that ordinance 27-1 of the general code is relevant to resolving this issue, the court must analyze the specific language of the ordinance. On its face, the ordinance permits a "licensed" pistol range if it is "under the supervision of the Police Department of The Township of Edison." Consequently it is clear that the municipal governing body specifically anticipated the possibility of a "licensed" *398 firearms range being located somewhere within the Township's borders.[17] This court is thus satisfied that the omission of a firearms range from the zoning ordinance was inadvertent as a matter of law. Simply stated, the use cannot be, at once, both permitted and prohibited.
By way of summary, it was proper for the Board to refer to ordinance 27-1 in analyzing the question of whether the omission of pistol ranges from the zoning ordinance was inadvertent. The Board's conclusion in this regard, based upon its legal interpretation of ordinance 27-1, was legally deficient and without any legitimate basis. Accordingly that portion of the resolution which concludes that the applicant failed to reconcile the proposed pistol range with its omission from the zoning ordinance is set aside as arbitrary, unreasonable and erroneous as a matter of law.[18]

*399 IV. The Remand

The final issue of moment to be resolved by this court is the nature of the proceedings to be conducted on remand. While it has long been the law of this State that conclusory resolutions which merely recite the statutory positive or negative criteria (N.J.S.A. 40:55D-70d) will not be sustained, this bedrock principle has been regularly ignored over the years. See Griffin Const. Corp. v. Bd. of Adjust. of Teaneck, 85 N.J. Super. 472, 477, 205 A.2d 313 (App.Div. 1964), certif. den., 44 N.J. 408, 209 A.2d 143 (1965); Harrington Glen, Inc. v. Mun. Bd. of Adj. of Bor. of Leonia, 52 N.J. 22, 28, 243 A.2d 233 (1968); Medici, supra, 107 N.J. at 25, 526 A.2d 109. This phenomenon is not entirely surprising, given the courts' historical response of vacating these deficient resolutions and remanding the matter to the board for adoption of a more detailed, factually grounded resolution.
Not only do boards generally lack an incentive to undertake the kind of deliberative and often painstaking process required to propose and adopt a proper resolution, but there exist subtle, yet significant disincentives which have resulted in widespread noncompliance. Far too often, complaints are filed challenging resolutions which lack a sufficient factual basis only to be remanded by the courts. Routinely, this remand only occurs:
1. after waiting 45 days for the adoption of a written resolution;
2. after the case has been pre-tried;
3. after the transcripts have been ordered;
4. after the case has been briefed by the plaintiff;
5. after the resolution's alleged factual and legal deficiencies have been identified; and
6. after the merits of the case have been argued.
By the time the matter has been remanded, the resolution's alleged deficiencies have already been identified and addressed *400 in detail by plaintiff and the court. Invariably, following the remand, the board or its attorney carefully draft a resolution articulating factual findings which have been specifically tailored to meet these perceived deficiencies.
Compounding this inherent inequity is the financial, and possibly irreparable, harm which will likely accrue to the plaintiff:
1. the proposed project has been, for all practical purposes, stalled during the pendency of the litigation;
2. financial commitments may possibly have lapsed;
3. interest rates may possibly have changed; and
4. contracts or options to purchase property may have expired.[19]
These circumstances cannot be claimed:
to encourage municipal action to guide the appropriate use or development of all lands in this State in a manner will promote the public health, safety, morals and general welfare and to encourage coordination of the various public and private procedures and activities shaping land development with a view of lessening the cost of such development and to the more efficient use of land.
Levin v. Tp. of Parsippany-Troy Hills, 82 N.J. 174, 179, 411 A.2d 704 (1980); cf. Manalapan Holding Co. v. Hamilton Tp. Pl. Bd., 184 N.J. Super. 99, 108, 445 A.2d 410 (App.Div. 1982), rev'd on other grounds, 92 N.J. 466, 473, 457 A.2d 441 (1984) (acknowledging that protracted determinations in the land development process result in undue harassment of applicants and substantial economic prejudice to legitimate plans and recognizing the consequent need for prompt disposition of applications).
Ironically a board which meets its statutory obligations, adopts a factually based resolution and thus permits meaningful judicial review, assumes an increased risk of reversal. On the other hand, a board which merely recites the statutory language will rarely be reversed outright.
Despite this reality, little can be done to alter this imbalance other than to provide the plaintiffs with the concomitant opportunity *401 following remand, to supplement the record in order to address any perceived deficiencies that may have come to light through the litigation process. This is especially appropriate in this case, not only because of the novel legal issues raised, but because of the numerous and significant legal errors made by the Board, which clearly impacted the nature, and at least indirectly, the extent of the proofs introduced by the applicants. See Medici, supra, 107 N.J. at 26, 526 A.2d 109 (because record and resolution were inadequate to sustain variance, applicant permitted on remand to supplement record).
Because both the record and resolution are inadequate to warrant the relief sought by the applicants, and because of the significant legal errors committed by the Board, the within matter is remanded for further proceedings not inconsistent with this opinion. Jurisdiction is not retained.
NOTES
[1] Plaintiffs also applied for waivers of preliminary and final site plan approval since no changes were being proposed to the site in question. Because it denied the requested use variance, the Board never reached the question of whether to grant the applicants' request for those waivers.
[2] The Township zoning ordinance does, however, provide in sections 86-20 and 86-20.1, that 2% or 2,000 feet (whichever is smaller) may be used for retail purposes which are accessory to a permitted principle use or, which have the primary purpose of serving occupants in a PUD.
[3] Although obviously knowledgeable in the area of firearms and recreational shooting, Mr. Pagano was not formally accepted by the Board as an expert. However, a full review of his testimony demonstrates sufficient breadth of experience and depth of knowledge to have qualified him as an expert which the Board impliedly, if not expressly, acknowledged. The deficiency, if any, was technical in nature and thus did not compromise the nature of his testimony.
[4] One necessary by-product resulting from the proposed shooting range would be the discharge of lead bullets, a hazardous material requiring disposal in accordance with New Jersey Department of Environmental Protection (N.J.D.E.P.E.) regulations. In this regard, Pagano indicated that such disposal would be handled by an independent company (not the Township's sanitation department) which would recycle the lead.
[5] Although one police officer suggested that police officers needed a range in the area and that there had been incidents where guns were illegally discharged, this officer's view was not substantiated by any documentation, incident reports, or other official records or statements of the police department.
[6] Although the Board's stated concern regarding the potential illegal transportation of firearms, (resolution, par. 8), undoubtedly contributed to its rejection of the variance application, this "perception" was legally irrelevant and was neither a proper subject of inquiry by the Board nor a proper basis for rejecting the application, as a matter of law. The regulation and control of legal (or illegal) firearm transportation is the function of those local, state, and federal authorities which have been charged with the responsibility of enforcing duly enacted laws restricting or regulating the sale and/or transportation of firearms. Similarly, the Board's interpretation of and reliance upon Ordinance 27-1, (not part of the zoning ordinance) which arguably prohibits this type of use anywhere in the Township, is entitled to no deference since a question of law is involved, as to which the Board has no special expertise, and probably lacks the power to resolve. See also, Jantausch v. Bor. of Verona, 41 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956) aff'd, 24 N.J. 326, 131 A.2d 881 (1957). See N.J.S.A. 40:55D-70(b) (interpretive power of Board limited to zoning map and zoning ordinance). These issues are more fully discussed in Section III B, infra.
[7] Although inherently beneficial uses are generally noncommercial, various profit-making ventures have been deemed to be inherently beneficial. Examples of inherently beneficial commercial uses include private, for-profit senior citizen congregate-care facilities, Kunzler v. Hoffman, 48 N.J. 277, 288, 225 A.2d 321 (1966); Jayber, Inc. v. Township of W. Orange, 238 N.J. Super. 165, 174-75, 569 A.2d 304 (App.Div. 1990); a 120-bed nursing home, Urban Farms, Inc. v. Borough of Franklin Lakes, 179 N.J. Super. 203, 212, 431 A.2d 163 (App.Div. 1981); a private day-care nursery, Three L. Corp. v. Newark Board of Adjustment, 118 N.J. Super. 453, 457, 288 A.2d 312 (Law Div. 1972); and a tertiary sewage treatment plant to serve a commercial trailer park, Wickatunk Village, Inc. v. Township of Marlboro, 118 N.J. Super. 445, 452, 288 A.2d 308 (Ch.Div. 1972).
[8] In the present case, the applicants did not attempt to establish that the pistol range qualified as an inherently beneficial use, a position that would have necessitated proof that the availability of existing shooting facilities in the reasonably proximate vicinity were so inadequate that the provision of this shooting range "would benefit the general welfare in a manner comparable to the benefit established by institutional-type uses." See Medici, supra, 107 N.J. at 24, 526 A.2d 109.
[9] While special reasons may also be established where the proofs demonstrate the inutility of the property for those uses permitted as of right, there was no proof in this case that the Raritan Center property was not reasonably adapted for any of the permitted or conforming uses. Indeed, the contrary appears to be true. Compare Kramer v. Sea Girt, supra, 45 N.J. at 282-283, 286-287, 212 A.2d 153 (proofs demonstrated that hotel site in question was unsuitable for single family use permitted under ordinance).
[10] As provided in Municipal Land Use Law, N.J.S.A. 40:55D-2, two of the stated purposes are:

(a) to encourage municipal action to guide.... development ... in a manner which will promote the public health ... and general welfare.
* * * * * * * *
(g) to provide sufficient space in appropriate locations for a variety of ... recreational ... uses ... in order to meet the needs of all New Jersey citizens.
[11] Compare Mocco v. Job, 56 N.J. Super. 468, 477, 153 A.2d 723 (App.Div. 1959) (facts relied upon presented no justification for conclusion that the particular site must be the location for the proposed variance in order to promote the general welfare).
[12] Compare Fobe Assoc. v. Mayor of Demarest, 74 N.J. 519, 379 A.2d 31 (1977) (rejection of use variance application to construct garden apartments in single family residence district affirmed where proof in the record failed to establish and board failed to conclude that the general welfare would be served because the site in question was particularly suitable for garden apartments).
[13] See Medici, supra, 107 N.J. at 18, 526 A.2d 109, describing the typical commercial use as a "convenience to its patrons" rather than an inherent benefit to the general welfare. To obtain a variance for such uses, any benefit to the general welfare must derive not from the use itself, but from the development of a site in the community that is particularly appropriate for that very enterprise. Id. at 18, 526 A.2d 109.
[14] As discussed more fully in section III(B)(2) infra, the Board's erroneous legal conclusion that section 27-1 of the general code of the Township of Edison precludes the applicants' ability to satisfy the second prong of the negative criteria as a matter of law, provides an additional basis for remand and reconsideration by the Board.
[15] Remaining questions regarding the dangers inherent at a shooting range, were resolved by the applicants' use of state of the art equipment and design. The Board took no issue with this testimony, nor did the record contain any evidence upon which the Board could reasonably have justified a contrary conclusion.
[16] Although the resolution fails to contain the deliberative and specific determinations required by the Supreme Court in Medici, supra, 107 N.J. at 25, 526 A.2d 109, it appears probable (at least on this record) that any finding by the Board that the applicants failed to establish the first prong of the negative criteria would have been arbitrary and unsustainable. The Board is free, of course, on remand, to review the record in light of any new testimony offered by the applicants.
[17] Although the Board suggests that ordinance 27-1 applies only to the police range located in the basement of police headquarters, this position is inconsistent with the clear language of the ordinance itself. The ordinance is general in nature and does not seek to limit the permitted discharge of firearms to one specific range nor does it otherwise identify the existing police range as the only exception permitted, though it could have easily done so.

While it is possible that the governing body intended any application for a firearms range to be made by way of a variance (in order to maximize the Board's discretion in locating such uses) the better approach as noted by Medici, would have been the inclusion of firearm ranges as a conditional use subject to clearly identified and articulated conditions. See N.J.S.A. 40:55D-67. Obviously, such conditions could address proximity to residential zones or other activities with which firearms would unreasonably conflict, as well as compliance with certain noise or safety standards. Having declined this legislative approach, the court is left to determine de novo, whether the governing body's failure to include any provision for a licensed firearm range was intentional.
[18] The resolution also provided that the applicants "did not introduce any convincing evidence that its proposed use would be consistent with the Township's master plan and zoning ordinance." This standard of review was erroneous as a matter of law. Under N.J.S.A. 40:55D-70(d), an applicant is not required to demonstrate consistency with the master plan or zoning ordinance, but rather need only demonstrate that the proposed variance, if granted, will not result in substantial impairment of the intent and purpose of the zone plan and zoning ordinance. Having thus imposed upon the applicants an improper burden of proof, the Board's decision could not, in any event, have been sustained.
[19] The foregoing list is not intended to be exhaustive but rather, merely illustrative of the disparity of impact to the parties who must endure these delays.