271 N.J. Super. 326 (1994)
638 A.2d 882
JAMES R. IENTILE, INC. PLAINTIFF-APPELLANT,
v.
THE ZONING BOARD OF ADJUSTMENT OF THE TOWNSHIP OF COLTS NECK AND THE TOWNSHIP OF COLTS NECK, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1994.
Decided March 11, 1994.
*327 Before Judges SKILLMAN, KESTIN and WEFING.
John F. DeBartolo argued the cause for appellant (Atkinson & DeBartolo, attorneys; Mr. DeBartolo, on the brief).
Michael B. Steib argued the cause for respondent (Mr. Steib, on the brief).
WEFING, J.S.C. (Temporarily Assigned).
Plaintiff, James R. Ientile, Inc. (Ientile), is a corporation which is engaged in the business of excavation and contracting. Ientile *328 negotiated an agreement with Thomas Orgo which permitted Ientile to use an 8,000 square foot building located on a 240-acre tract of land which was leased by Orgo and used by Orgo as a farm. The agreement between them permitted Ientile to use this building to repair and service its heavy equipment. An Ientile employee was at the site five days a week working on Ientile equipment and, occasionally, on farm equipment owned by Orgo. Ientile used this location solely for maintenance and repair work; it did not store any of its equipment at the site. Ientile did not pay Orgo in cash for this use. Instead, under the agreement between the two, Orgo was permitted to use Ientile's heavy equipment when he needed it in his farming operations.
Orgo's farm is located in the area of Colts Neck which is zoned "AG." Permitted principal uses within the AG zone include buildings and land devoted to agricultural uses, farms and residences. Permitted accessory uses within the AG zone include barns, tool sheds, greenhouses and customary accessory buildings to farms.
Ientile received four notices that its use of Orgo's barn for equipment repair and service violated the Colts Neck zoning ordinance. In each notice Ientile was directed to abate the violation. Ientile's response was to apply to the Colts Neck Board of Adjustment for an interpretation of the Township's zoning ordinance that Ientile's use of this building was a permitted accessory use since it involved the repair and service of equipment used by Orgo on the farm.
At the conclusion of the hearing, one Board member introduced a motion that "this as a whole operation is not permitted." The motion was seconded, but in the subsequent vote the Board split three to three, and the motion failed. Another Board member then proposed a motion "that the use of property to repair items or equipment off premises is a permitted use." Prior to voting, this motion was described as proposing an interpretation of the zoning ordinance in favor of Ientile. This motion also received a three to three vote and thus failed as well.
*329 Thereafter, the Board adopted a resolution in which it found that Ientile's use of the property to repair and service its equipment was for the benefit of its own business, and did not serve as an accessory to Orgo's farm. It further found that Ientile's repair of Orgo's equipment and Orgo's occasional use of Ientile's equipment were "merely a substitute for the payment of rent." The resolution concluded that the three-to-three (tied) vote on the motion, which would have effectively approved Ientile's requested interpretation of the Colts Neck ordinance, constituted a denial of the application.
Ientile then filed a complaint in lieu of prerogative writ, which was similarly unsuccessful. This appeal resulted.
The Colts Neck ordinance defines principal use as: "[t]he main purpose for which a lot, structure or building, or a portion thereof is used." The ordinance further provides that a lot may have only one principal use. The ordinance defines accessory buildings, structure or use in the following manner:
[A] building, structure, or use which is customarily associated with and is subordinate and incidental to the principal building, structure, or use and which is located on the same lot therewith....
We agree with the Board of Adjustment of Colts Neck and with the trial court that Ientile's use of this building is not a permitted accessory use under the Colts Neck zoning ordinance and thus we affirm.
We note at the outset that the issue presented is one of interpretation of the Colts Neck zoning ordinance, and that the determinations made by the Board of Adjustment and the trial court rest upon essentially undisputed factual findings. The application to the Board did not call for the exercise of any expert discretionary judgment. It was solely one for interpretation of an ordinance. Such interpretation is a judicial function and the conclusions of the Board of Adjustment and the trial court are not, in consequence, entitled to any special deference. Cherney v. Matawan Borough Zoning Bd. of Adj., 221 N.J. Super. 141, 144-45, 534 A.2d 41 (App.Div. 1987).
*330 Even without such special deference, however, we are satisfied that Ientile's use of this building as a repair shop for equipment used in his construction business clearly is not incidental and subordinate to the farm use. That the transaction made economic sense to both parties is not material to the interpretation of the zoning ordinance.
Ientile also argues that the Board never should have entertained the second motion since the first motion that "the whole operation is not permitted" did not pass; Ientile contends that this constituted an approval of a proposed use under N.J.S.A. 40:55D-9(a).
We do not agree. This statute provides in part that "[f]ailure of a motion to receive the number of votes required to approve an application for development shall be deemed an action denying the application." To adopt the plaintiff's position would be to transform a tie vote on the issue of a permitted use into an affirmative vote. We are satisfied that such an interpretation would not further the legislative intent in this instance. As the trial judge noted in his oral opinion, the substance of what the Board did that night was to deny the application, and that is what they had intended to do. We cannot subvert that intention on the basis of semantic arguments.
Affirmed.
SKILLMAN, J.A.D., concurring.
I agree with the majority's conclusion that Ientile's use of a farm building as a repair shop for equipment used in its construction business is not incidental and subordinate to the permitted agricultural use of the property. However, I disagree with the majority's opinion insofar as it rests on the view that the Board of Adjustment (the Board) made a legally effective interpretation of the Colts Neck zoning ordinance.
The matter was brought before the Board by Ientile's "application for interpretation of zoning ordinance" which sought a decision *331 by the Board that its "current use of the building ... is permitted as an accessory use pursuant to Section 707.2D." After hearing testimony by plaintiff's president, James Ientile, and the person who actively farms the property, a Board member moved that the Board decide that Ientile's use of the farm building as a repair shop is not a valid accessory use. Three Board members voted for and three voted against this motion. After the Board expressed some confusion regarding the effect of this tie vote, another Board member moved that the Board decide that Ientile's use of the building is a permitted accessory use. Again, the Board's vote was three members for and three against the motion.
Subsequently, the Board adopted a resolution memorializing this action. The resolution noted the tie votes and then stated that "[p]ursuant to N.J.S. 40:55D-9 the failure of a motion to receive the number of votes required to approve an application is deemed an action denying the application." Accordingly, the Board resolved that "the application of JAMES T. IENTILE, INC. requesting an interpretation that the Applicant's proposed use of the subject property is permitted by the Colts Neck Development Ordinance, be and is hereby denied." The resolution also recited findings of fact and conclusions of law consistent with the views of the three Board members who concluded that Ientile's use of the farm building as a repair shop is not a permitted accessory use. This resolution was adopted by an affirmative vote of three Board members, with the other two members then present abstaining.
The general rule governing multi-member public agencies is that a majority of members constituting a quorum must cast an affirmative vote for the agency to take official action. Matawan Regional Teachers Ass'n v. Matawan-Aberdeen Reg. Sch. Dist. Bd. of Educ., 223 N.J. Super. 504, 507, 538 A.2d 1331 (App.Div. 1988). This general rule is codified in the Municipal Land Use Law, which provides, subject to certain exceptions not applicable to this case, that "[a]ll actions shall be taken by a majority vote of *332 the members of the municipal agency present at the meeting." N.J.S.A. 40:55D-9(a).
A majority of the quorum present at the Board meeting at which Ientile's application was considered failed to vote in favor of either the motion declaring that its use is permitted or the motion declaring that its use is prohibited. Instead, there was a tie vote on both motions which, under the majority vote rule, constituted a failure to take official action.
However, the Board was advised by its attorney that its tie votes on Ientile's application were controlled by the part of N.J.S.A. 40:55D-9(a) which states that "[f]ailure of a motion to receive the number of votes required to approve an application for development shall be deemed an action denying the application." Thus, the Board was advised that the effect of its tie votes was not limited to a denial of Ientile's request for an interpretation of the zoning ordinance, but also resulted in a finding that Ientile's use of the property is prohibited. The Board subsequently adopted a memorializing resolution in conformity with this advice.
However, the part of N.J.S.A. 40:55D-9(a) upon which the Board's attorney relied applies only to an "application for development," which is defined in the Municipal Land Use Law as "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan, planned development, conditional use, zoning variance or direction of the issuance of a permit pursuant to [N.J.S.A. 40:55D-34] or [N.J.S.A. 40:55D-36]." N.J.S.A. 40:55D-3. A request to a board of adjustment to exercise its authority under N.J.S.A. 40:55D-70(b) to provide an interpretation of a zoning ordinance plainly does not fall within this definition of an "application for development." Therefore, the Board's tie votes should not have been "deemed" to be a denial of Ientile's application pursuant to N.J.S.A. 40:55D-9(a).
I would add that there are practical reasons for "deeming" a tie vote on an application for development to be a denial which are not applicable to a request for an interpretation of a zoning *333 ordinance. Boards of adjustment and planning boards have exclusive authority to grant any of the applications for development identified in N.J.S.A. 40:55D-3. See N.J.S.A. 40:55D-20. Consequently, official action denying an application for development is ordinarily a precondition to a party seeking judicial relief by an action in lieu of prerogative writs. AMG Assocs. v. Township of Springfield, 65 N.J. 101, 109 n. 3, 319 A.2d 705 (1974). However, a party may file a declaratory judgment action seeking an interpretation of a municipal ordinance without first requesting an interpretation by the board of adjustment. Honigfeld v. Byrnes, 14 N.J. 600, 603-04, 103 A.2d 598 (1954); Supermarkets Oil Co. v. Zollinger, 126 N.J. Super. 505, 507, 315 A.2d 702 (App.Div. 1974). Indeed, since the interpretation of an ordinance is a judicial function, a court is not required to extend any deference to a board of adjustment's interpretation. Jantausch v. Borough of Verona, 41 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956), aff'd, 24 N.J. 326, 131 A.2d 881 (1957); Grancagnola v. Planning Bd. of Verona, 221 N.J. Super. 71, 75, 533 A.2d 982 (App.Div. 1987).
The fact that the Board's tie votes on Ientile's request for an interpretation of the zoning ordinance were memorialized in a resolution which was passed by an affirmative vote of three members, with two abstaining, did not transform the Board's prior decision into a majority vote in favor of the conclusion that Ientile's use of the farm building is prohibited. N.J.S.A. 40:55D-10(g)(2) provides in pertinent part:
Only the members of the municipal agency who voted for the action taken may vote on the memorializing resolution, and the vote of a majority of such members present at the meeting at which the resolution is presented for adoption shall be sufficient to adopt the resolution. An action pursuant to section 5 of the act (C. 40:55D-9) (resulting from the failure of a motion to approve an application) shall be memorialized by resolution as provided above, with those members voting against the motion for approval being the members eligible to vote on the memorializing resolution. The vote on any such resolution shall be deemed to be a memorialization of the action of the municipal agency and not to be an action of the municipal agency. . ..
[Emphasis added.]
*334 It is thus clear that the pertinent votes were the tie votes on the request for an interpretation of the municipal ordinance and not the later memorializing resolution.
Since the Board failed to take any official action in response to Ientile's request for an interpretation of the zoning ordinance, this case should be treated as a declaratory judgment action seeking an interpretation of the ordinance. Viewing the case in this light, I agree with the majority that under the undisputed facts Ientile's use of the farm building as a repair shop for equipment used in its construction business is not incidental and subordinate to the permitted agricultural use of the property. Therefore, I join in the affirmance of the judgment on appeal.