291 N.J. Super. 303 (1995)
677 A.2d 278
HENRY PULLEN, PLAINTIFF,
v.
SOUTH PLAINFIELD PLANNING BOARD & HENRY FEINBERG, T/A RITE-AID PHARMACY, DEFENDANTS.
Superior Court of New Jersey, Law Division Middlesex County.
Decided January 24, 1995.
*306 James F. Clarkin, for Plaintiff, Henry Pullen (Borrus, Goldin, Foley, Vignuolo, Hyman and Stahl).
Renato R. Biribin, for Defendant, South Plainfield Planning Board.
Stephen L. Ritz and Marie Seitz, for Defendant, Henry Feinberg, T/A Rite-Aid Pharmacy (O'Brien, Liotta & Mandel).
WOLFSON, J.S.C.
This is an action in lieu of Prerogative Writs brought by Henry Pullen, an objector, against the South Plainfield Planning Board (the Planning Board) and Henry Feinberg, t/a Rite-Aid Pharmacy & Store (Feinberg or applicant). Pullen seeks to overturn the Planning Board's approval of an application seeking preliminary and final site plan and subdivision approval. The novel issue raised in this case is essentially one of statutory construction; that is, whether the planning board's power to grant variances under N.J.S.A. 40:55D-70c(2) (referred to as a "flexible `c'" variance[1]) extends to circumstances where the benefits to be obtained by permitting the deviation flow not from the specific deviation itself, but rather from the general development of the site as proposed by the applicant.

*307 I. Factual Background

Mr. Feinberg is the contract purchaser of a proposed "T" shaped lot to be created from two existing lots, one being 300' X 100' and fronting on Holly Avenue, the other being 175' X 100' and fronting on Park Avenue. Feinberg proposes to utilize a 100' X 100' parcel from the second lot to create a new lot, leaving a 100' X 200' portion of the second lot fronting on Holly Avenue. The property is located in the OBC-1 zone, the local business zone, which permits retail uses such as the proposed Rite-Aid Pharmacy. The property, the site of a former used car lot, is vacant and partially paved with no other improvements.
The Board met to consider Feinberg's application on September 14, 1993, September 28, 1993 and October 26, 1993 when it adopted its original resolution. Pursuant to the consent order dated March 24, 1994, the Board met again on April 12, 1994 and adopted an Amended Resolution. During the initial three meetings, Feinberg and the objector presented to the Board expert testimony in support of and against the variances and waivers being sought. In order to accommodate the concerns raised by the Board, the objector and the general public during the hearings, Feinberg made several major revisions to the site plan.
At the meeting on October 26, 1993, following a substantial reduction of the building size, intended to diminish the impact of the requested variances on the neighboring properties, the Board granted preliminary and final site plan approval along with the requested ancillary variances and site design waivers.[2]
*308 Although plaintiff challenges the sufficiency of the amended resolution, his central objection relates to the Board's approval of a 20' set back on Holly Avenue.[3]
The October 26, 1993 resolution concluded that "the Holly Avenue frontage of the property [is] to be considered a rear yard requiring only a 20' setback." However, to the extent that a variance was deemed required from a front yard, then it was "granted to 20'."
The applicant had argued before the Board that because a deed restriction precluded ingress or egress from Holly Avenue to the property, the Holly Avenue frontage should be deemed a "rear yard", requiring only a 20' setback. The Board apparently accepted this argument. However, given the interpretive powers vested with the Zoning Board of Adjustment under N.J.S.A. 40:55D-70b, this court suggested that the question of interpretation be submitted to the South Plainfield Zoning Board of Adjustment.[4]
On July 19, 1994 the Zoning Board held a hearing on this issue, after which three Board members concluded that the Holly Avenue side of the property was a rear yard, while three others determined that same portion to be a front yard.[5] Consequently, this Court is called upon to determine the effect, if any, of the tie vote in conjunction with the merits of the litigation against the Planning Board.

*309 II. The Tie Vote of the Zoning Board

N.J.S.A. 40:55D-9(a) provides in part that "[f]ailure of a motion to receive the number of votes required to approve an application for development shall be deemed an action denying the application." However, an application for development, as defined by the Municipal Land Use Law, (N.J.S.A. 40:55D-3) is limited to "the application form and all accompanying documents required by ordinance for approval of a subdivision plat, site plan, planned development, conditional use, zoning variance or direction of the issuance of a permit pursuant to [N.J.S.A. 40:55D-34] or [N.J.S.A. 40:55D-36]."
A request under N.J.S.A. 40:55D-70(b) for an interpretation of a zoning ordinance plainly falls outside the scope of an "application for development." See, Ientile, Inc. v. Zoning Bd. of Adj., 271 N.J. Super. 326, 332, 638 A.2d 882 (App.Div. 1994) (Skillman, J.A.D., concurring). As explained by Judge Skillman in his concurring opinion in Ientile, supra, "there are practical reasons for `deeming' a tie vote on an application for development to be a denial which are not applicable to a request for an interpretation of a zoning ordinance." Id., at 332, 333, 638 A.2d 882. Boards of adjustment and planning boards have exclusive authority to grant specific applications for development. N.J.S.A. 40:55D-20. A party may not seek judicial review of a denial of such an application prior to official action on the part of the boards. AMG Assocs. v. Township of Springfield, 65 N.J. 101, 109 n. 3, 319 A.2d 705 (1974).
Conversely, a party may file a declaratory judgment action seeking to interpret a municipal ordinance without first exhausting the right to seek such an interpretation from the board of adjustment. Honigfeld v. Byrnes, 14 N.J. 600, 603-04, 103 A.2d 598 (1954); Supermarkets Oil Co. v. Zollinger, 126 N.J. Super. 505, 507, 315 A.2d 702 (App.Div. 1974). Furthermore, since interpreting an ordinance involves a purely legal question, the courts are not required to extend any deference, and are required to make their own decisions, de novo. Jantausch v. Borough of Verona, 41 *310 N.J. Super. 89, 96, 124 A.2d 14 (Law Div. 1956) aff'd, 24 N.J. 326, 131 A.2d 881 (1957); Grancagnola v. Planning Bd. of Verona, 221 N.J. Super. 71, 75, 533 A.2d 982 (App.Div. 1987).
Since the tie vote of the zoning board did not result in a denial of any application for development, this court must determine, de novo, whether the Holly Avenue portion of the premises is a front yard (requiring a variance) or a rear yard, to which the site plan conformed.

III. The Ordinance
The South Plainfield ordinance requires a 30' front yard setback and a 20' rear yard setback in the OBC-1 Local Business zone. Any analysis of whether the property in question is a front or a rear yard must begin with an examination of the ordinance itself.
The South Plainfield ordinance provides:
Corner Lots. For the purpose of regulating the locations of buildings on corner lots, and on lots extending through between two parallel streets, all portions of a corner lot or a through lot which fronts on a public street shall be subject to the front yard requirement of the zone district in which said corner lot or through lot is located. (emphasis added).
The ordinance defines a "through lot" as "an interior lot having frontage on two (2) streets." In its definition of a "street", the ordinance is silent regarding the impact of use restrictions, or on the availability of access.
In interpreting a zoning ordinance the court is compelled to give effect to the legislative intent. AMN, Inc. v. So. Bruns. Tp. Rent Leveling Bd., 93 N.J. 518, 524-525, 461 A.2d 1138 (1983). Even where the drafters of an ordinance may not have considered a certain set of circumstances, the construing court should render a decision "consonant with the probable intent of the draftsmen had [they] anticipated the situation at hand." AMN, Inc., supra; Matlack v. Burlington Cty. Bd. of Chosen Freeholders, 194 N.J. Super. 359, 476 A.2d 1262 (App.Div.), certif. denied 99 N.J. 191, 491 A.2d 693 (1984).
*311 The ordinance expressly sets forth that its purposes, inter alia, are "[t]o provide adequate light, air and open space ... [t]o promote a desirable visual environment through creative development techniques and good civic design and arrangements;" and "to encourage development which incorporates the best features of design and relates the type, design and layout of residential, commercial and industrial and recreational development of the particular sight."
In this case, the proposed "T" shaped lot creates frontage on both Holly Avenue and Park Avenue. It would appear therefore, that the ordinance would require this property to be deemed a "Corner Lot"; that is, one that "extends between two parallel streets". Given these expressions of legislative intent, coupled with a common sense reading of the ordinance in its entirety, I conclude that the Holly Avenue portion of this parcel is subject to the 30' front-yard setback requirement, a conclusion more consistent with and in furtherance of both the local and state legislative purposes. Moreover, the absence of any special exception for dealing with properties which may be subject to a restrictive covenant, further supports this interpretation.[6]
Accordingly, this Court must determine whether the Planning Board's decision granting the variance from the 30' setback requirement was arbitrary, capricious and unreasonable. Pagano v. Zoning Bd. of Adjustment, 257 N.J. Super. 382, 388, 608 A.2d 469 (Law Div. 1992), citing, Ward v. Scott, 16 N.J. 16, 105 A.2d 851 (1954).

IV. The Decision of the Planning Board
In reviewing a decision of the Planning Board, the Court's power is tightly circumscribed. New Brunswick Cellular Tel. Co. *312 v. Old Bridge Pl. Bd., 270 N.J. Super. 122, 134, 636 A.2d 588 (Law Div. 1993). Recognizing that municipal boards are composed of local citizens, familiar with the community's characteristics and interests, and are therefore the "best equipped to pass initially on such applications for variances", the courts have afforded their decisions a presumption of validity. Ward v. Scott, 16 N.J. 16, 23, 105 A.2d 851 (1954); Charlie Brown of Chatham v. Chatham Bd. of Adj., 202 N.J. Super. 312, 321, 495 A.2d 119 (App.Div. 1985); Galdieri v. Morris Tp. Bd. of Adj., 165 N.J. Super. 505, 515, 398 A.2d 893 (App.Div. 1979). See also, Pagano v. Zoning Bd. of Adjustment of Twp. of Edison, 257 N.J. Super. 382, 388, 608 A.2d 469 (Law Div. 1992). "So long as there is substantial evidence to support it, the Court may not interfere with or overturn the decision of a municipal board. Even when doubt is entertained as to the wisdom of the Board's action, there can be no judicial declaration of invalidity absent a clear abuse of discretion by the Board." New Brunswick Cellular, supra, 270 N.J. Super. at 134, 636 A.2d 588. Consequently, the courts must affirm the Board's decision unless it is arbitrary, unreasonable or capricious. Kramer v. Bd. of Adjust., Sea Girt, 45 N.J. 268, 296, 212 A.2d 153 (1965).
Nonetheless, the applicant retains the burden of meeting the statutory variance prerequisites. Chirichello v. Monmouth Beach Bd. of Adj., 78 N.J. 544, 559-560, 397 A.2d 646 (1979). "Even when the motivation is well-intentioned, local zoning action must comply with the statutory requirements." Hill Homeowners v. Passaic Bd. of Adj., 134 N.J. Super. 107, 109, 338 A.2d 824 (App.Div. 1975).
In its findings of fact, the Planning Board stated that "this in effect would be a C-2 variance, the benefits outweighing the detriments." (T. 4/12/94 p. 26). That section, N.J.S.A. 40:55D-70c(2) empowers a board to grant a dimensional variance where the purposes of the Municipal Land Use Law (MLUL) would be advanced by a deviation from the zoning ordinance requirements *313 and the benefits of the deviation would substantially outweigh any detriment.
The objector urges a very restrictive interpretation of the statute. He argues in this case that the "deviation" from the required 30' front yard setback alone must further the purposes of the MLUL and that only that those benefits flowing from the 10' differential between a 20' setback and the 30' requirement may be factored into the required balancing test.
In Kaufmann v. Planning Bd. For Warren Tp., 110 N.J. 551, 542 A.2d 457 (1988), the Supreme Court examined the legislative history of the c(2) variance noting that "because of its lesser moment the c(2) variance need not be so closely confined to the general welfare. Rather, it may take its meaning as well from the other specific purposes of zoning set forth in the MLUL." Id., at 563, 542 A.2d 457. As explained by the Supreme Court:
no c(2) variance should be granted when merely the purposes of the owner will be advanced. The grant of approval must actually benefit the community in that it represents a better zoning alternative for the property. The focus of a c(2) case, then, will be not on the characteristics of the land that, in light of current zoning requirements, create a "hardship" on the owner warranting a relaxation of standards, but on the characteristics of the land that present an opportunity for improved zoning and planning that will benefit the community.
[Ibid.; emphasis in original].[7]
Accordingly, this flexible test for granting a dimensional variance requires an analysis of the benefits and burdens of the applicant's proposal, along with specific consideration of whether the proposal would substantially impair the zone plan or negatively impact on the public good. A c(2) variance stands if, after adequate proofs are presented, the board without arbitrariness concludes that the harms, if any, are substantially outweighed *314 by the benefits. Id., at 565, 542 A.2d 457. As noted by one leading commentator, what must be shown is that the application: "[1] relates to a specific piece of property; [2] that the purposes of the Municipal Land Use Law would be advanced by a deviation from the zoning ordinance requirement; [3] that the variance can be granted without substantial detriment to the public good; [4] that the benefits of the deviation would substantially outweigh any detriment; and [5] that the variance will not substantially impair the intent and purpose of the zone plan and zoning ordinance." See, Cox, New Jersey Zoning and Land Use Administration (1994), at Sec. 6-3.3.
In Bressman v. Gash, 131 N.J. 517, 621 A.2d 476 (1993), the applicant sought a rear-yard setback variance in order to accommodate a garage with a side entry, purely for aesthetic reasons. The Appellate Division rejected the propriety of a c(2) variance, concluding that the applicant, and not the community would benefit from the grant. The Supreme Court reversed, holding that the beneficial aesthetic effects of the proposal, building a house more "in keeping with the character of the area" (Id. at 530, 621 A.2d 476) and more attractive than alternative plans (Id.), was properly considered by the Board. See also Kaufmann, supra, 110 N.J. at 563, 542 A.2d 457.[8]
The Bressman result is at odds with the position urged by the objector in this case. The 32' "differential" in Bressman (28' rear yard setback where 60' required) did not itself advance any of the purposes of the MLUL. However, the overall development proposal sufficiently promoted a desirable visual environment so as to justify the Board's decision granting the variance.[9]
*315 Furthermore, a contrary interpretation would place a more stringent standard on an applicant seeking a bulk variance than would be applicable to a use variance under N.J.S.A. 40:55D-70(d), a result clearly incompatible with the Court's characterization of a c(2) variance as being of a "lesser moment". Kaufmann, 110 N.J., at 563, 542 A.2d 457.[10] That higher standard of proof "would be inapplicable in dimensional-variance applications because in such cases the use ordinarily conforms to the ordinance." Bressman, supra, 131 N.J. at 532, 621 A.2d 476 (Stein, J. concurring).
Judicial precedents support the granting of variances for safe and attractive structures to replace unsafe and dilapidated structures, which would otherwise remain eyesores and dangerous, diminishing nearby property values. See, New Hope Baptist Church v. Sommerhalter, 214 N.J. Super. 363, 365-366, 519 A.2d 887 (App.Div. 1986) (dilapidated "eyesore" and "danger" eliminated, thus protecting public safety and preventing property from remaining unoccupied and deteriorating further); Kramer v. Board of Adjustment, Sea Girt, 45 N.J. 268, 212 A.2d 153 (1965) (fireproof hotel to replace dangerous structure in residential zone); Kessler v. Bowker, 174 N.J. Super. 478, 487, 417 A.2d 34 (App.Div. 1979), certif. denied, 85 N.J. 99, 425 A.2d 264 (1980) (expansion of nonconforming retail appliance shop making property safer for children by removing attractive nuisance); Hudanich v. Avalon, 183 N.J. Super. 244, 443 A.2d 777 (Law Div. 1981) (seven stores on a pier to replace a structure declared unsafe).
Likewise, a Planning Board may properly consider the aesthetic benefits of a development proposal, a desirable visual environment being expressly included among the purposes of the *316 MLUL.[11]See, Bressman v. Gash, supra, 131 N.J. at 530, 621 A.2d 476 (1993); Morris Cty. F. Housing v. Boonton Tp., 230 N.J. Super. 345, 357, 553 A.2d 814 (App.Div. 1989); see also, D. Bernstein, A New Variance-The Flexible `c', supra.
In this matter, the Board factually determined that the property was a "blight". In addition it accepted the applicant's contention that the Holly Avenue frontage would be "passive"; that is, because of the deed restriction, no ingress or egress would occur on that portion of the lot where the 30' setback was required. The Board also accepted the expert testimony of the applicant's professional planner that the visual impact of the proposed building, fronting on Holly Avenue, would be negligible, and concluded further that adjoining property values would not be negatively impacted.[12] Finally, the applicant proposed to perform an environmental clean-up on the site, which proposal was linked to the *317 Board's approval.[13]
Ultimately, the Planning Board concluded "[t]he development would be a benefit to the area ... the development of the building on this site in this fashion would not create a negative impact to the residents on Holly Avenue ... and the variances requested have been minimized and would not be detrimental or adverse to the master plan or the zoning ordinance of the Borough of South Plainfield." (T. 4/12/94 pp. 42-44).
It is evident to this court that the Planning Board performed the proper weighing process applicable to a c(2) variance based upon appropriate considerations. I find that the Board could have legitimately concluded, based on the established record, that the proposed variances did not substantially impair the public good or the purposes of the zoning ordinance, and that the character of the neighborhood would be enhanced by removing a blight and cleaning the contaminated site.
Therefore, mindful of the discretion vested in local boards, the Planning Board's grant of the subject application cannot be deemed arbitrary, capricious or unreasonable.
The decision of the planning board is sustained. Counsel for the Board shall submit an Order granting judgment to the defendants.
NOTES
[1] N.J.S.A. 40:55D-70c(2) provides:

where in an application or appeal relating to a specific piece of property the purposes of this act would be advanced by a deviation from the zoning ordinance requirements and the benefits of the deviation would substantially outweigh any detriment, grant a variance to allow departure from regulations pursuant to article 8 of this act ... (Emphasis supplied).
[2] Approval was subject to a number of minor conditions, unrelated to the substantive issues raised in this appeal:

A. Erecting a 6 foot board on board fence along Holly Avenue;
B. Development of the parking slots to be determined one year after approval by the code enforcement officer; and
C. Applicant enter into a developer's agreement to pay its fair share of the improvements to Holly Avenue.
[3] Predictably, the objector's residence fronts on Holly Avenue, in the OBC-1 zone, across from the proposed lot. The OBC-1 zone's requirement for a front yard set back is 30', but only 20' for a rear yard.
[4] To the extent that the Zoning Board were to determine that the Holly Avenue portion of the property was a rear yard, no variance would have been necessary, a determination which would likely have been dispositive of the objector's action. Jurisdiction of the pending Complaint was retained.
[5] Why only six members voted, or whether any alternates were available to participate, is not discernible on this record.
[6] The suggestion that a private restrictive covenant could affect the applicability of a zoning ordinance is devoid of any legal merit. Private parties cannot, through agreement or otherwise suspend or modify duly enacted municipal regulations.
[7] To illustrate the point, the Court noted for example, that included among the purposes of the MLUL, (N.J.S.A. 40:55D-2j) is the prevention of "degradation of the environment through improper use of land." Thus a property crossed by a stream "might call for an adjustment of side or front yards better to protect the stream bed, or a stand of trees might call for a shifting a lot sizes (if a minor subdivision). In some cases a height variance might better serve to conserve `open space * * * and valuable natural resources'." Id. at 563, 542 A.2d 457.
[8] Interestingly, the very circumstances giving rise to the grant of the variance in Bressman were anticipated by one early commentator as specifically contemplated by the flexible c variance. See D. Bernstein, A New Variance  The Flexible `c', 114 N.J.L.J. 569 (Nov. 29, 1984, at 17, col. 3.) (aesthetic reasons sufficiently grounded in sound principles of zoning to justify setback or sideyard variance under c(2) so as to permit an attached garage).
[9] Although the Supreme Court concluded that the record did not compel the grant of either a c(1) ("hardship") or c(2) variance, the record did support the grant under either section, such that the Board could not be held to have abused its discretion in approving the application.
[10] The objector's restrictive interpretation of c(2) would require rejection of a bulk variance on proofs which would (and have) sustained a use variance. See e.g., Burbridge v. Mine Hill Tp., 117 N.J. 376, 568 A.2d 527 (1990).
[11] See, e.g., N.J.S.A. 40:55D-2i, promoting "a desirable visual environment through creative development techniques and good civic design and arrangement ...", and see, N.J.S.A. 40:55D-2j; preventing "degradation of the environment through improper use of land." See also, Burbridge v. Mine Hill Tp., 117 N.J. 376, 568 A.2d 527 (1990) (Improved aesthetics alone held sufficient to satisfy the far heavier burden of establishing "special reasons" for the granting of a `d' variance under N.J.S.A. 40:55D-70d).
[12] Although the objector additionally criticized the Board's conclusion that no substantial negative impact on property values would ensue from the grant of the variance, this contention is without merit. The Board specifically found the condition of the property to be a "blight". In its current state, this lot presently impacts the neighborhood negatively. Compare, Somol v. Bd. of Adj. of Morris Pl., 277 N.J. Super. 220, 234-35, 649 A.2d 422 (Law Div. 1994) (where vacant lot used as a debris and waste dumping ground, granting of variance eliminates a substantial detriment to the public good and thereby satisfies negative criteria).

In addition, the proposed Rite Aid is a permitted use under the zoning ordinance. One cannot presume that approval of a permitted use will result in substantial detriment to the public good. Moreover, as a condition of the approval, the Board required a 6' board on board fence along Holly Avenue, where the 20' setback was planned. Finally, the Holly Avenue frontage was deed restricted so as to reduce traffic movements related to the proposed use.
Given the presumption of correctness that attaches to the Board's conclusions, its decision cannot be said to be either arbitrary or capricious.
[13] The applicant testified that the proposed improvements to the property would not be made unless the Board approved a 20' setback on the Holly Avenue frontage, purportedly due to the minimum building size required to maintain the economic feasibility of the project. The Board was entitled to consider these assertions and accept them or reject them as it deemed appropriate.